# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                           **No.**    **12-cr-1563 WJ**
                                                      **16-cv-0599 WJ/SMV**

**ARCHIE MANZANARES,**

     **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Archie Manzanares's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed June 15, 2016. [CR Doc. 35; CV Doc. 1]. The United States responded on November 19, 2016.[1] [CR Doc. 42; CV Doc. 10]. Manzanares replied on January 13, 2017. [CR Doc. 51; CV Doc. 19]. The Honorable William P. Johnson, United States District Judge, referred this matter to me for analysis and a recommended disposition. [CV Doc. 2]. Having considered the briefing, relevant portions of the underlying criminal record, and relevant authorities, and being otherwise fully advised in the premises, I find that Manzanares's prior felony convictions for aggravated assault with a deadly weapon, aggravated battery, and armed robbery qualify as violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), irrespective of the now-unconstitutional residual clause. I further find that the government did not waive its argument that the predicate offenses qualify

---

[1] After the motion was filed, the United States filed an unopposed motion to stay briefing in the case pending the Tenth Circuit's resolution of *United States v. Maldonado-Palma*, which would address an issue in this case (whether New Mexico's aggravated assault statute was a qualifying predicate felony). [CV Doc. 5]. I granted the motion. [CV Doc. 6]. On October 26, 2016, after the Tenth Circuit issued a decision in *Maldonado-Palma*, I lifted the stay and directed the government to respond. [CV Doc. 9].

outside of the residual clause. Therefore, he is not entitled to re-sentencing pursuant to *Johnson v. United States* and *Welch v. United States*. I recommend that his motion be denied.

## I. **Background**

On June 27, 2012, Manzanares was charged via indictment with being a felon in possession of a firearm/ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1). Presentence Report ("PSR") at 4. On April 1, 2013, he was charged via information with possession of heroin, in violation of 21 U.S.C. § 844(a). *Id.* He pleaded guilty to both charges on April 1, 2013. *Id.* The plea bargain Manzanares negotiated with the government hinged on his status as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"). If he was found to be an armed career criminal, the parties would agree to a sentence of 180 months, or 15 years. *Id.* If he was found not to be an armed career criminal, Manzanares would be permitted to withdraw from the plea. *Id.*

United States Probation and Pretrial Services prepared his PSR. It provided that Manzanares qualified as an armed career criminal under the ACCA because he had at least three prior convictions for violent felonies or serious drug offenses. *Id.* at 7. In applying the ACCA enhancement, the PSR did not list which prior felony convictions constituted the "violent felonies" or "serious drug offenses." *Id.* Elsewhere in the PSR, however, Manzanares's prior felony convictions are listed. *Id.* at 5. Among them are aggravated assault with a deadly weapon, aggravated battery, and armed robbery, all in New Mexico. *Id.* Likewise, the PSR lists his entire criminal history in a separate section, though it does not indicate which of the offenses were felonies (as opposed to misdemeanors) and which were relied on as predicate offenses in applying the ACCA enhancement. *See id.* at 8–12.

With the armed career criminal enhancement, Manzanares's offense level was 34. *Id.* at 7. Based on a downward adjustment for acceptance of responsibility, his total offense level was 31, with a criminal history category of VI and a guideline imprisonment range of 188–235 months. *Id.* at 8, 19. On July 2, 2013, the Court held a sentencing hearing. *See* [CR Doc. 33]. The parties did not object to the PSR. *See id.* at 3. The Court accepted the plea agreement and the PSR's designation of Manzanares as an armed career criminal under the ACCA. *Id.* at 5. The Court sentenced him to 180 months' imprisonment. *Id.* Manzanares did not appeal his sentence. The instant case is his first motion under § 2255.

## II. <u>Motions under § 2255 and *Johnson II*</u>

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court . . . to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States* ("*Johnson II*"), 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called "residual clause" of the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

*Id.* (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Johnson II*, 135 S. Ct. at 2557. That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson II* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

### III. **Manzanares's § 2255 Motion**

Manzanares has at least three prior felony convictions that were determined to qualify as violent felonies under § 924(e)(2)(B) of the ACCA, triggering that provision's sentencing enhancement.[2] *See* PSR at 5, 7; [CR Doc. 2] at 1. He now challenges the application of the sentencing enhancement. Manzanares first raises a threshold issue. Neither the PSR nor the Court expressly stated (1) which three of his prior felony convictions were the predicate offenses

---

[2] There is a discrepancy as to the precise number of felony convictions he has: his PSR lists six, but his charging document lists five. *Compare* PSR at 5, *with* [CR Doc. 2] at 1. The discrepancy is immaterial, however, because the conviction not listed in the indictment is not one of the three on which the government relies for the ACCA sentencing enhancement.

that justified application of the ACCA enhancement or (2) which clause of § 924(e)(2)(B) the convictions fell under (i.e., the so-called "force clause," the "enumerated clause," or the "residual clause"). [Doc. 1][3] at 6–9; [Doc. 19] at 13–14. Because the government failed to object to the PSR or the Court's adoption of the ACCA enhancement at sentencing, Manzanares contends that it has waived the right to now argue that certain of his prior convictions qualified as violent felonies under the clauses that remain intact in § 924(e)(2)(B) in the wake of *Johnson II*. Manzanares maintains that it was never clear "which, if any," of his prior convictions qualified as violent felonies. [Doc. 1] at 8. He argues it would be "fundamentally unfair" to permit the government to "swap in" convictions it now believes are violent felonies notwithstanding the holding of *Johnson II* and the unconstitutional residual clause. *Id.* at 7, 9.

In the alternative, Manzanares contends that his prior convictions do not qualify as violent felonies under the remaining clauses of § 924(e)(2)(B). He identifies three of his prior New Mexico convictions: aggravated assault with a deadly weapon, aggravated battery, and armed robbery.[4] He argues that none of the offenses requires the degree of physical force necessary to satisfy the force clause of § 924(e)(2)(B), and none qualifies under the enumerated clause. And, given that the residual clause has been invalidated, he contends he does not have the requisite predicate offenses and is therefore entitled to be resentenced.

The government contends, as an initial matter, that it did not waive the right to contest that certain of Manzanares's prior felony convictions qualify under the still-extant clauses of the

---

[3] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 16-cv-0599 WJ/SMV.

[4] Though, as Manzanares points out, the PSR never indicated which three of his prior convictions were the qualifying felonies, the parties seem to agree that these are the three at issue. Furthermore, in a memorandum filed after Manzanares filed the instant motion, the United States Probation Office identified these three prior convictions as those that "meet the definition of violent felony, without the use of the residual clause." [Doc. 7].

ACCA's definition of "violent felony," even if they were not specified in the PSR or at sentencing. [Doc. 10] at 14–15. The government argues that, because Manzanares did not object to the PSR or the imposition of the armed career criminal enhancement, "the Court must assume that it relied upon *all*" of Manzanares's prior convictions. *Id.* at 15 (emphasis added). The government contends that each of the three identified prior convictions qualifies under the force clause of the ACCA. *Id.* at 3–14.

### IV. <u>The United States did not waive the right to argue that Manzanares's prior felony convictions qualified as violent felonies under the force clause of the ACCA.</u>

Manzanares raises a threshold issue that I consider at the outset. In effect, he argues that the government was obligated to object to the PSR's and the Court's failure to identify explicitly which of his prior felony convictions supported his ACCA enhancement or which clause of § 924(e)(2)(B) (i.e., the force clause, enumerated clause, or residual clause) the convictions qualified under. *See* [Doc. 1] at 6–7. Manzanares contends that, by failing to object at the time of his sentencing, the government waived the right to identify at this later date certain of those prior convictions and argue that they still qualify as ACCA predicate offenses in the wake of *Johnson II*. Manzanares contends it would be "fundamentally unfair" to allow the government to "swap out unidentified ACCA predicate offenses" on collateral review of his ACCA enhancement. I find that the government has not waived these arguments, and all of Manzanares's prior qualifying offenses constitute the "universe of convictions" that may be considered in determining whether he is entitled to relief.

As Manzanares points out, the government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement is appropriate. *United States v. Delossantos*, 680 F.3d 1217, 1219 (10th Cir. 2012). The PSR in this case identified six prior

6

felony convictions and, without stating which of the six were qualifying predicate offenses, applied the ACCA enhancement. The Court accepted the finding that Manzanares was an armed career criminal and accepted the plea agreement. There can be no doubt that Manzanares knew the ACCA enhancement was being applied. Indeed, his plea agreement was specifically premised on a finding that he qualified as an armed career criminal; if the Probation Office or the Court were to find otherwise, Manzanares was entitled to withdraw from the plea agreement. Manzanares did not object to the PSR. Nor did he object at sentencing.

Although Manzanares now maintains that the government cannot rely on prior convictions not specifically referenced as ACCA predicates in the PSR or at sentencing, he provides no case law that actually supports his argument as applied to the facts of this case. He relies on a single case from the Eleventh Circuit in support of his position. *See* [Doc. 1] at 7 (citing *McCarthan v. Warden*, 811 F.3d 1237 (11th Cir. 2016), *rev'd en banc on other grounds sub nom. McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (2017)). In *McCarthan*, the Eleventh Circuit was tasked with determining the "universe of convictions" it could consider in determining, on the defendant's § 2241 motion, whether the ACCA enhancement was appropriate. 811 F.3d at 1253–54. As in the present case, neither the PSR nor the sentencing court explicitly identified which ones qualified as ACCA predicates. *Id.* at 1242. Neither the government nor the defendant had objected to the failure to specifically identify the qualifying offenses. *Id.* On review, the court noted that, "[i]n general, both the PSR and the sentencing court should specifically identify which of a defendant's prior convictions qualify" as ACCA predicates. *Id.* at 1253. A defendant is "entitled to know the specific convictions on which an ACCA enhancement is recommended and imposed." *Id.* "To hold otherwise would

raise serious due-process concerns." *Id.* The court went on to hold, however, that the defendant had "forfeited any objection to the sentencing court's failure to identify the specific convictions supporting his ACCA enhancement" by failing to object to the PSR, failing to object at his sentencing hearing, and failing to raise the issue in his first § 2255 petition. *Id.* at 1253–54. The court concluded that it "must, therefore, assume that the district court relied on all of [the defendant's] ACCA-qualifying convictions in imposing" his ACCA enhancement. *Id.* at 1254.

To be sure, *McCarthan* states that a defendant is entitled to know which of his prior convictions serve as qualifying offenses for purposes of the ACCA enhancement. But it also puts the onus on the *defendant*, not the government, to object to the PSR or at sentencing where the ACCA enhancement is applied and the qualifying prior convictions are not expressly identified.[5] And, where there is no such objection, the reviewing court may presume that the

---

[5] The court in *McCarthan* did discuss, in a footnote, the circumstances under which the government's failure to object to the PSR or at sentencing would constitute waiver. 811 F.3d at 1250 n.8. The court stated the following:

> The government bears the burden of objecting to a district court's decision not to rely on certain of a defendant's ACCA-qualifying convictions at sentencing to impose an ACCA enhancement. If the government fails to object to the district court's decision to rely on fewer than all ACCA-qualifying convictions, it waives any argument that a sentencing court's imposition of an ACCA enhancement is justified on the basis of an ACCA-qualifying conviction that the district court could have, but did not, rely on at sentencing. In other words, the government may not substitute a new predicate offense for an invalid predicate offense for the first time on appeal where it failed to object to the sentencing court's decision not to rely on the new predicate offense at sentencing. Similarly, we will not permit the government to swap out such unidentified ACCA predicate offenses in a petitioner's collateral attack on his ACCA enhancement.

*Id.* (internal citations omitted). Manzanares cites to this language in support of his position, but it is inapposite to the facts of this case. The foregoing analysis refers to circumstances where the PSR and the sentencing court have identified some (but not all) of a defendant's prior convictions as predicate offenses for purposes of the ACCA enhancement. In such a case, *McCarthan* provides that the government must object if it believes that other, additional prior convictions outside of those identified by the PSR or court are qualifying predicate offenses. Failure to object in such circumstances constitutes waiver of the right to argue later that the additional prior convictions are qualifying ACCA predicates. But that is not the factual landscape of the present case. Here, no prior offenses were specifically deemed ACCA predicates. By the same token, no prior qualifying offenses were specifically excluded from that designation. In such a circumstance, and where the defendant does not object, the court must assume that

sentencing court relied on *all* ACCA-qualifying convictions. *McCarthan* contravenes Manzanares's waiver argument.

A recent decision from this District further compels my finding that the government has not waived the right to rely on Manzanares's prior convictions. *See United States v. Garcia*, No. 16-cv-0240 JB/LAM, 2017 WL 2271421, at *19–21 (D.N.M. Jan. 31, 2017). In that case, the defendant contended the government had waived the right to argue on collateral review that robbery was a qualifying violent felony, because the PSR failed to include robbery as one of the three predicate offenses that gave rise to the ACCA enhancement and the government did not object. *Id.* at 19. The court disagreed. Though the robbery conviction was not listed in the ACCA section of the PSR, it was included in the PSR's list of his prior convictions, and the sentencing judge relied on the PSR in its entirety. For that and other reasons specific to that case,[6] the government had not waived its argument. The court also found that the defendant had not waived his argument by failing to object to the PSR or at sentencing. Ultimately, "even if [the defendant] did not have reason to object at the time of sentencing, and did not object, these issues . . . are irrelevant. There is no dispute that he has a robbery conviction, and the conviction's existence cannot be waived. The Court can consider it. It does not disappear. What [the sentencing judge] did with it, or did not do with it, ten years ago is irrelevant." *Id.* at 21. *Garcia* thus stands for the proposition that a party's failure to object to the inclusion or

---

*all* prior qualifying convictions were relied on for the ACCA enhancement. *See id.* at 1254. The government had no reason to object, and it was not obligated to do so. This analysis is inapplicable here.

[6] Several other facts led the court to this conclusion: the government had filed notice of its intent to seek the ACCA enhancement and had included the robbery conviction in the notice; the sentencing judge referred to the defendant's "six prior convictions," one of which was robbery; and the defendant acknowledged at sentencing that he had a prior robbery conviction. 2017 WL 2271421, at *19–20.

exclusion of a prior conviction at sentencing does not foreclose consideration of that conviction on collateral review.

The applicable "universe of convictions" in the present case consists of all ACCA-qualifying prior felony convictions listed in Manzanares's PSR. The government is not foreclosed from arguing that any such convictions remain qualifying "violent felonies" even absent the unconstitutional residual clause.

## V. I will conduct harmless error review.

As noted above, the record is silent as to which clause or clauses under § 924(e)(2)(B) the Court relied on at sentencing in finding that Manzanares had the requisite number of qualifying ACCA offenses. Thus, it is simply not clear whether there was, in fact, constitutional error in Manzanares's sentencing. Courts have divided on the question of whether a defendant must make a threshold showing that he was sentenced under the residual clause before his § 2255 claim may proceed.[7] The government does not argue that Manzanares was required to make such a showing. Instead, the government essentially makes a "harmless error" argument. That is, the government argues that Manzanares is not entitled to resentencing because, notwithstanding the now-invalided residual clause, his prior convictions still qualify as violent felonies under the force clause. Any reliance on the residual clause at sentencing, therefore, was harmless.

---

[7] *Compare, e.g., Garcia*, 2017 WL 2271421, at *18 ("Garcia has proven by a preponderance of the evidence that Judge Conway applied the ACCA enhancement, in part pursuant to the Residual Clause), *with United States v. Pyle*, No. 16-cv-0846 JB/SCY, [Doc. 16] at 11 (D.N.M. Apr. 4, 2017) ("Defendant has established . . . that the sentencing judge *may have* relied on the residual clause when he sentenced Defendant . . . . [I]n these circumstances, that is enough."), *and United States v. Hamilton*, 235 F. Supp. 3d 1229, 1234 (N.D. Okla. 2017) ("[W]here the record is silent and a court could have relied on multiple clauses at the time of sentencing, a defendant need not show a sentencing court 'actually relied' on the residual clause.").

The harmless error analysis turns on whether a court harbors "grave doubt" about whether the claimed error had a "substantial and injurious effect or influence" on the outcome. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995); *see also United States v. Rivera*, 347 F.3d 850, 852 (10th Cir. 2003).[8] Numerous courts have found that § 2255 petitions based on *Johnson II* are subject to harmless error analysis. *See, e.g.*, *United States v. Mitchell*, 653 F. App'x 639, 645 n.7 (10th Cir. 2016) ("[B]ecause [the defendant's] prior conviction qualified [as a crime of violence] under the still-valid [force] clause, any error was harmless because the outcome would have been the same if the court explicitly applied that clause."); *Garcia*, 2017 WL 2271421, at *17–18 (applying harmless error review and noting that "[a] majority of courts hearing § 2255 petitions in this context" have done the same); *United States v. Richardson*, 2016 WL 6600242, at *4 (D. Colo. Nov. 8, 2016) (applying harmless error review in *Johnson II* context); *see also United States v. Hicks*, 2016 WL 5672949, at *3 (N.D. Cal. Oct. 3, 2016) (collecting cases). I will conduct harmless error review. That is, I will consider whether any reliance on the now-invalidated residual clause was harmless because Manzanares's prior felony convictions for aggravated assault with a deadly weapon, aggravated battery, and armed robbery qualify under the force clause of the ACCA.[9]

---

[8] Manzanares contends a heightened standard of review should apply. He believes he is entitled to resentencing unless the Court finds that any *Johnson II* error was "harmless beyond a reasonable doubt," [Doc. 1] at 8, i.e., the harmless error standard applicable to direct appeals. *See United States v. Smith*, 723 F.3d 510, 516–17 (4th Cir. 2013) (discussing the competing standards). While some circuits have applied the harmless-error-beyond-a-reasonable-doubt standard to § 2255 cases, *see id.* at 517, the Tenth Circuit applies the substantial-and-injurious-effect-or-influence standard. *See United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006). Manzanares seems to concede as much, as he notes that he raises the issue "[t]o preserve [it] for review by the Tenth Circuit en banc or the Supreme Court." [Doc. 1] at 8. I am bound by and therefore follow the harmless error standard set out by the Tenth Circuit.

[9] The government does not contend that any of the prior convictions qualifies under the enumerated clause. The only question, then, is whether they qualify under the force clause. *See* § 924(e)(2)(B).

**VI. Manzanares's predicate offenses qualify as violent felonies
under the force clause of the ACCA.**

**A. The Force Clause of § 924(e)(2)(B)**

The "force clause" of § 924(e)(2)(B) provides that an underlying conviction is a violent felony where it "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). To determine whether a prior conviction qualifies as a violent felony under the force clause, courts compare § 924(e)(2)(B)(i) with the elements of the underlying statute of conviction.

Specifically, courts must compare the force required for a conviction of the predicate offense against the physical force requirement of § 924(e)(2)(B)(i). Courts must determine whether the least culpable conduct criminalized by the underlying offense—e.g., the least amount of force required to sustain a conviction for New Mexico aggravated assault with a deadly weapon—meets the physical force requirement of the force clause. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts are encompassed by [the force clause]." (last set of brackets added) (internal quotation marks omitted)). This inquiry requires application of both federal and state law. Federal law defines the meaning of the phrase "use, attempted use, or threatened use of physical force" in § 924(e)(2)(B)(i). *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017). And state law defines the substantive elements of the crime of conviction. *Id.*; *United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009). In discerning the level of force that gives rise to conviction under the predicate offense, there must be a "*realistic probability*, not a

theoretical possibility," that the statute would apply to the conduct contemplated. *Rivera-Oros*, 590 F.3d at 1133 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

In undertaking this comparison, courts generally apply the "categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). That is, courts look only to the statutory definition of the predicate offense, while ignoring the particular facts of the case. *Id.* If the statute of conviction "sweeps more broadly" than the force clause (i.e., if conviction could result without the use of "physical force," as federal law defines that term), the prior conviction cannot qualify as an ACCA predicate, irrespective of whether the defendant's actual conduct in committing the crime involved the use of physical force. *See id.*

Some statutes, however, have a more complicated structure and require a slightly different approach. A single statute may be "divisible"—it may list elements in the alternative—and thereby define multiple crimes. *Id.* at 2281. When a statute defines multiple crimes by listing alternative elements, courts undertake the "modified categorical approach" to determine *which* of the multiple alternative elements listed in the statute applied to convict the defendant. *Id.* Under the modified categorical approach, a sentencing court looks to the record of conviction (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court may then compare the physical force required for conviction under that crime, as the categorical approach commands, with the physical force requirement of the force clause. *See id.*

The Supreme Court has provided guidance for determining whether a statute is indivisible or divisible and, thus, whether to implement the modified categorical approach first or proceed directly to the categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2256–57

(2016). The central question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple different crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it enumerates various factual *means* of committing a single element (i.e., an indivisible statute, requiring the categorical approach). *Id.* at 2249–50. If a state court decision "definitively answers the question," then a sentencing judge "need only follow what it says." *Id.* at 2256. Or, "the statute on its face may resolve the issue." *Id.* If statutory alternatives carry different punishments, then they must be elements (and, thus, the statute divisible, triggering the modified categorical approach). *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.*

### B. Manzanares's Prior Convictions

In *Johnson v. United States* ("*Johnson I*"), 559 U.S. 133, 138–40 (2010), the Supreme Court interpreted "physical force" to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. The Court offered this interpretation in the course of holding that the force required for conviction under a state battery statute—"*any* intentional physical contact, no matter how slight"—was less than the ACCA's physical force requirement. *Id.* at 138 (internal quotation marks omitted). In other words, "physical force" under the force clause means more than *de minimis* touching. *See Harris*, 844 F.3d at 1264–65 ("It is important to keep in mind why it was necessary for the Court [in *Johnson I*] to use the language" of "*violent* force" and "strong physical force"—namely, because the Court "was rejecting the government's argument that physical force means . . . . even the slightest offensive touching." (internal quotation marks omitted)).

I consider below whether each of Manzanares's prior convictions for New Mexico aggravated assault with a deadly weapon, aggravated battery, and armed robbery requires the degree of force necessary to satisfy the "physical force" requirement of § 924(e)(2)(B)(i).

### 1. *Aggravated Assault with a Deadly Weapon*

Manzanares was convicted of aggravated assault, NMSA 1978, § 30-3-2. That statute provides:

> Aggravated assault consists of either:
>
> A. unlawfully assaulting or striking at another with a deadly weapon;
>
> B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or
>
> C. willfully and intentionally assaulting another with intent to commit any felony.

§ 30-3-2. There is no dispute that Manzanares was convicted of aggravated assault with a deadly weapon, § 30-3-2(A). *See* [Doc. 1] at 9; [Doc. 10] at 3; *see also* PSR at 5, 8. There are three ways to commit the underlying simple assault in New Mexico: (1) attempted battery; (2) causing another person to reasonably believe he is in danger of receiving an immediate battery ("apprehension causing" assault); or (3) using insulting language toward another. NMSA 1978, § 30-3-1.

Tenth Circuit precedent compels the result here. In *United States v. Ramon Silva*, 608 F.3d 663, 670–71 (10th Cir. 2010), the Tenth Circuit held that "apprehension causing" aggravated assault with a deadly weapon was a violent felony under the ACCA's force clause. The Tenth Circuit expounded on the holding of *Ramon Silva* in *United States v.*

*Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016). It held that § 30-3-2(A), aggravated assault with a deadly weapon, is categorically a "crime of violence" under the force clause of the United States Sentencing Guidelines § 2L1.2, no matter which theory of the underlying simple assault applied. *Id.* at 1250. The court first determined that the New Mexico aggravated assault statute is divisible—it consists of three subsections setting out alternative elements. *Id.* at 1247. Turning to the elements of aggravated assault with a deadly weapon, the court found that commission of that crime requires the *use* (and not just the mere possession) of a deadly weapon in carrying out the assault. *Id.* at 1250. In New Mexico, a deadly weapon is one that is "'capable of producing death or great bodily harm . . .; or any other weapon[] with which dangerous wounds can be inflicted.'" *Id.* (first alteration in original) (quoting NMSA 1978, § 30-1-12(B)). Employing such a weapon in an assault "necessarily threatens the use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'" *Id.* (quoting *Johnson I*, 559 U.S. at 140). Therefore, the court concluded, New Mexico aggravated assault with a deadly weapon is categorically a crime of violence. *Id.*

The holding of *Maldonado-Palma* applies in equal measure to the identically worded force clause of the ACCA's definition of violent felony. Interpretations of the force clause in the Guidelines context are equally applicable in the ACCA context, and vice versa. *See id.* at 1248 (relying on interpretation of "physical force" in ACCA case to inform meaning of Guidelines force clause); *Ramon Silva*, 608 F.3d at 671 ("Given the similarity in language between the ACCA and [Guidelines], we have occasionally looked to precedent under one provision for guidance under another."); *Mitchell*, 653 F. App'x at 642 ("We have consistently applied the same analysis to the career offender provision and the analogous provision of the ACCA where

the clauses are virtually identical." (internal quotation marks omitted)).  In other words, *Maldonado-Palma* compels a finding that New Mexico aggravated assault with a deadly weapon qualifies as a violent felony under the force clause of the ACCA.  Therefore, New Mexico's aggravated assault with a deadline weapon statute, § 30-3-2(A), qualifies as a violent felony under the force clause of the ACCA, 18 U.S.C. § 924(e)(2)(B), irrespective of the now-invalidated residual clause.

Manzanares urges that a recent decision of the New Mexico Court of Appeals, *State v. Branch*, 2016-NMCA-071, 387 P.3d 250, undercuts the reasoning of *Ramon Silva* and *Maldonado-Palma* and compels a different outcome.  *See* [Doc. 19] at 1–5.  In short, he argues that, per the reasoning of *Branch*, assault in New Mexico does not require proof of the defendant's intent to assault the victim—only that the victim reasonably believed he or she was in danger.  *Id.* at 2.  Because the Tenth Circuit's decisions rested on the principle that the use of physical force must be "intentional 'against the person of another,'" they are at odds with New Mexico case law interpreting its assault statute, and thus were wrongly decided.  *Id.* at 4 (quoting *Ramon Silva*, 608 F.3d at 672).  Whatever the merit of Manzanares's argument,[10] I am bound by the Tenth Circuit's decisions in *Ramon Silva* and *Maldonado-Palma*.  *Branch* was decided before *Maldonado-Palma*; it does not undermine the precedential value of that decision. I need not consider Manzanares's argument on this point any further.  *See United States v. Miera*, 2013 WL 6504297, at *18 (D.N.M. Nov. 22, 2013) (questioning the Tenth Circuit's opinion in *Ramon Silva* but concluding that the court "is not, however, free to disregard the

---

[10] At least one decision of this District has considered, and rejected, arguments similar to Manzanares's, finding that *Ramon Silva* and *Maldonado-Palma* are not inconsistent with *Branch*.  *United States v. Sanchez*, 16-cv-0659 JAP/GBW, [Doc. 20] at 22–24 (D.N.M. July 5, 2017).

majority's conclusion that aggravated assault with a deadly weapon in New Mexico is a violent felony" under the force clause of the ACCA).

### 2. Aggravated Battery

Manzanares was also convicted of aggravated battery, NMSA 1978, § 30-3-5. That statute provides:

> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.

> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.

> C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

§ 30-3-5. The statute is divisible into its respective misdemeanor and felony subsections. Subsection B defines misdemeanor aggravated battery, and subsection C defines felony aggravated battery. As *Mathis* instructs, statutory alternatives carrying different penalties "must be elements." 136 S. Ct. at 2256 (citing *Apprendi*, 530 U.S. 466).[11]

---

[11] Manzanares does not address the question of divisibility in his motion. *See generally* [Doc. 1]. In its response, the government argues that the statute is divisible into its misdemeanor and felony subsections. [Doc. 10] at 8–10. In reply, Manzanares contends that the government's "lengthy discussion of the modified categorical approach is unnecessary." [Doc. 19] at 8. He goes on, "If the offense is not categorically a [violent felony], then the court does not use the modified categorical approach to evaluate it. In other words, because the statue is overly broad and indivisible as to the unlawful touch element, the modified categorical approach is not applied." *Id.* Manzanares appears to suggest that, because simple battery is a component of aggravated battery—no matter which subsection the Court considers—the divisibility question is irrelevant, because simple battery does not require *Johnson I*-level physical force. As discussed *infra*, his analysis is mistaken. The divisibility analysis necessarily precedes comparison of the elements of the crime of conviction against the force clause. *See Mathis*, 136 S. Ct. at 2256 (characterizing the divisibility question ("elements or means?") as the "threshold inquiry").

Because I find the statute is divisible, I apply the modified categorical approach and determine whether Manzanares was convicted under subsection B or subsection C. *Id.* at 2249 (describing the modified categorical approach). I find that he was convicted under subsection C, the felony version of the statute. In this instance, the question of whether he was convicted under subsection B or subsection C is a question of whether he was convicted of a misdemeanor or a felony. *See* § 30-3-5. It is not clear to me whether Manzanares genuinely contests that he was convicted of the felony, rather than the misdemeanor, version of aggravated battery.[12] To the extent he does, and to the extent he has not waived the argument that his aggravated battery conviction was not a felony conviction at all,[13] I take judicial notice of the public record of his conviction, which shows that he was convicted of felony aggravated battery, § 30-3-5(C).[14]

Having concluded that he was convicted of felony aggravated battery, I apply the categorical approach and compare the elements of § 30-3-5(C) against the force clause of § 924(e)(2)(B). I find that the least culpable conduct under that statute necessarily involves the use or threatened use of physical force—that is, "force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

Conviction under § 30-3-5(C) requires proof that the defendant committed a battery (1) that inflicted great bodily harm, (2) with a deadly weapon, or (3) in a manner whereby great

---

[12] Neither party submitted documentation of his prior conviction beyond the PSR. In a footnote in his reply, Manzanares cites Tenth Circuit case law providing that "a court may not use [a PSR] to resolve a conviction's ambiguities." [Doc. 19] at 8 n.3 (citing *United States v. Hays*, 526 F.3d 674, 678 (10th Cir. 2008)). He concludes that "nothing in the record shows a jury found—or that Manzanares pleaded guilty to—any other requirement of a predicate offense." *Id.* While he does not concede that his conviction was for felony aggravated battery, neither does he argue that the Court must assume his conviction was a misdemeanor, thereby unable to serve as a predicate violent felony under § 924(e)(2)(B).

[13] *See McCarthan*, 811 F.3d at 1253–54.

[14] *See* New Mexico Court Case Lookup, Case Number Search for D-1329-CR-200500216, https://caselookup.nmcourts.gov/caselookup/app (showing that Manzanares pleaded guilty to "AGGRAVATED BATTERY (DEADLY WEAPON) – A THIRD DEGREE FELONY").

bodily harm could be inflicted. § 30-3-5(C); *see also* UJI 14-322 NMRA; UJI 14-323 NMRA

(essential elements instructions for felony versions of aggravated battery). "Great bodily harm,"

under New Mexico law, is "an injury to the person which creates a high probability of death; or

which causes serious disfigurement; or which results in permanent or protracted loss or

impairment of the function of any member or organ of the body." NMSA 1978, § 30-1-12(A).

A "deadly weapon" is "any firearm," "any weapon which is capable of producing death or great

bodily harm," or "any other weapons with which dangerous wounds can be inflicted."

§ 30-1-12(B). Aggravated battery with a deadly weapon requires the *use* of the deadly weapon.

UJI 14-322 (instructing that aggravated battery with a deadly weapon requires proof that the

defendant "touched or applied force to" the victim with a deadly weapon and that "[t]he

defendant *used*" a deadly weapon (emphasis added)).

The Tenth Circuit has not specifically addressed whether New Mexico felony aggravated

battery satisfies the force requirement set out in *Johnson I*. However, it has evaluated similar

statutes. In *United States v. Treto-Martinez*, the Tenth Circuit held that Kansas aggravated

battery satisfied the force clause of the Guidelines.[15] 421 F.3d 1156, 1160 (10th Cir. 2005).

---

[15] Although *Treto-Martinez* pre-dates *Johnson I*, the court in *Treto-Martinez* did not apply a lesser standard of "physical force" in interpreting the force clause. *Compare Treto-Martinez*, 421 F.3d at 1159 (holding that "[a]lthough not all physical contact performed in a rude, insulting[,] or angry manner would rise to the level of physical force," (i.e., more than mere touching is required), such contact would satisfy the force clause if carried out with a deadly weapon), *with Johnson I*, 559 U.S. at 140 (requiring more than mere touching to satisfy the force clause). Therefore, it does not appear that the precedential value of *Treto-Martinez* was diminished by *Johnson I*. In fact, it appears that *Johnson I* resolved a split among the circuits as to whether mere touching could satisfy the force clause—essentially affirming the Tenth Circuit's approach. *See generally Hays*, 526 F.3d at 677–81 (discussing the circuit split); *id.* at 684 n.4 (Ebel, J., dissenting) (also discussing the circuit split). The Supreme Court held that mere touching was not enough, which is consistent with earlier Tenth Circuit decisions. *See, e.g.*, *United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003) ("Force, as used in the definition of a crime of violence, is synonymous with destructive violent force."); *Hays*, 526 F.3d at 681 ("[P]hysical force in a crime of violence[] must, from a legal perspective, entail more than mere contact. Otherwise, *de minimis* touchings could [suffice]." (internal quotation marks omitted)). Accordingly, it does not appear to me that *Johnson I* necessarily changed the law in the Tenth Circuit nor made stale our circuit court's earlier decisions on the scope of the force clause.

Conviction under one prong of the statute required "physical contact . . . whereby great bodily harm, disfigurement or death can be inflicted." *Id.* "It is clear," the court held, "that a violation of this provision" suffices to satisfy the force clause. *Id.* "No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the "threatened use of physical force." *Id.*

Recent Tenth Circuit cases interpreting assault statutes are also instructive. In *Maldonado-Palma*, as noted *supra*, the court held that New Mexico aggravated assault with a deadly weapon was categorically a crime of violence under the Guidelines' force clause. 839 F.3d at 1249. The use of a weapon "capable of producing death or great bodily harm" "necessarily threatens the use of physical force." *Id.* at 1250. Similarly, in *Ramon Silva*, the court held that New Mexico's "apprehension causing" aggravated assault statute qualified under the force clause of the ACCA. 608 F.3d at 670–71. Even though the assault statute could be violated without any actual physical contact or violence perpetrated against the victim, the conduct it criminalized "'could always lead to . . . substantial and violent contact, and thus . . . would always include as an element' the threatened use of violent force. *Id.* at 672 (quoting *Treto-Martinez*, 421 F.3d at 1160); *see also United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016) (noting that "regardless of the type of dangerous weapon that is employed by a particular defendant, the use of a dangerous weapon during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause" (internal quotation marks omitted)).

Based on these cases, I find that New Mexico felony aggravated battery requires the use of *Johnson I*-level physical force. Conviction under this provision requires more than mere *de minimis* force (i.e., physical touching, no matter how slight). It requires the intent to injure and commission in a manner whereby great bodily harm is inflicted, where death or great bodily harm could be inflicted, or where a deadly weapon is used. *See* § 30-3-5(C). A battery committed in a manner that could inflict great bodily harm necessarily requires "force capable of causing physical pain or injury." *Johnson I*, 559 U.S. at 140; *Treto-Martinez*, 421 F.3d at 1160. Likewise, given the holding of *Maldonado-Palma* and its predecessors, a battery committed with the use of a deadly weapon "always constitutes a sufficient threat of force to satisfy the [force] clause." *Taylor*, 843 F.3d at 1224 (internal quotation marks omitted). The additional requirements of felony aggravated battery—essentially, that serious bodily injury did or could have occurred—put the statute squarely in the range of conduct that the Tenth Circuit has found to satisfy the physical force requirement of the force clause. Several other decisions of this District to decide the issue have reached the same conclusion.[16]

Manzanares's arguments to the contrary are unpersuasive. He argues that conviction under the aggravated battery statute can result from mere "unlawful touching, however slight." [Doc. 19] at 6; *see also* [Doc. 1] at 22–23. Because "[s]imple battery is a necessary element of aggravated battery," he contends, any unlawful touch will satisfy the battery element, and no more force is required for conviction of the greater offense of aggravated battery. [Doc. 19] at 5. But Manzanares cites no case that supports his argument. His citations to cases analyzing

---

[16] *E.g.*, *United States v. Pacheco*, 16-cv-0341 WJ/CG, [Doc. 15] at 8–9 (D.N.M. Aug. 1, 2017); *United States v. Sanchez*, 16-cv-0659 JAP/GBW, [Doc. 20] at 24–27 (D.N.M. July 5, 2017); *United States v. Dallas*, 16-cv-0676 MV/LF, [Doc. 15] at 6–10 (D.N.M. May 3, 2017); *United States v. Sedillo*, 16-cv-0426 MCA/LAM, [Doc. 18] at 13–16 (D.N.M. Mar. 6, 2017); *United States v. Vasquez*, 16-cv-0678 JAP/WPL, [Doc. 11] at 8 (D.N.M. Jan. 10, 2017).

"simple" battery, rather than felony aggravated battery, are inapposite. *See State v. Ortega*, 1992-NMCA-003, 113 N.M. 437; *State v. Seal*, 1966-NMSC-123, 76 N.M. 461; *State v. Hill*, 2001-NMCA-094, 131 N.M. 195. And the cases he cites that do evaluate the aggravated battery statute indisputably involve the use of physical force. *See State v. Traeger*, 2001-NMSC-022, 130 N.M. 618 (defendant used baseball bat to beat victim). Manzanares ignores the plain language of the statute, which explicitly requires more than mere touching. He cites no authority suggesting otherwise.

Manzanares also cites to two Tenth Circuit cases he believes control the outcome here. *See* [Doc. 1] at 23–24; [Doc. 19] at 7–9. But both cases discuss statutes that are readily distinguishable from the statute at issue. In *United States v. Hays*, the court held that a Wyoming battery statute did not satisfy the force clause. 526 F.3d 674. However, the underlying statute could be violated by "unlawfully touching someone in a rude, insolent or angry manner." *Id.* at 678. Because that provision could be violated by "any contact, however slight," the court held that it did not satisfy the force clause. Likewise, in *United States v. Barraza-Ramos,* the Tenth Circuit held that a Florida aggravated battery statute, which criminalized battery against pregnant women, did not satisfy the force clause. 550 F.3d 1246, 1250–51 (10th Cir. 2008). The statute could be violated by merely "touching" a pregnant woman against her will. *Id.* at 1249. Neither *Hays* nor *Barraza-Ramos* contemplated a battery statute with the additional requirements of the intent to injure *and* commission (1) in a manner that causes great bodily harm, (2) with the use of a deadly weapon, or (3) in a manner whereby great bodily harm could be inflicted. These additional requirements distinguish New Mexico aggravated battery from the statutes in those

cases.  New Mexico felony aggravated battery, § 30-3-5(C), qualifies as a violent felony under the force clause of the ACCA.

### 3. Armed Robbery

Finally, I consider Manzanares's prior conviction for armed robbery.  The New Mexico armed robbery statute provides:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.
>
> Whoever commits robbery is guilty of a third degree felony.
>
> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

§ 30-16-2.  The statute is divisible into simple robbery, a third degree felony, and armed robbery, a first degree felony.[17]  *See id.*; *Mathis*, 136 S. Ct. at 2256 (statutory alternatives carry different penalties "must be elements" (citing *Apprendi*, 530 U.S. at 466)).  There is no dispute that Manzanares was convicted of armed robbery rather than simple robbery.  *See* [Doc. 1] at 21–22; [Doc. 10] at 13–14; *see also* PSR at 5, 10.  Therefore, I consider whether New Mexico armed robbery requires the degree of physical force necessary to satisfy the force clause of the ACCA.

I find that it does.  Though the parties dispute whether the additional requirement of being armed with a deadly weapon during the commission of the robbery necessitates the use of force, I find that New Mexico robbery necessarily requires the use of *Johnson I*-level physical force irrespective of whether the defendant was armed.

---

[17] Neither party explicitly argues the divisibility or indivisibility of the statute.

The New Mexico robbery statute contains a force element: it requires that the theft be committed "by use or threatened use of force or violence." NMSA 1978, § 30-16-2. Indeed, "[t]he use of force, violence, or intimidation is an essential element of robbery." *State v. Lewis*, 1993-NMCA-165, ¶ 8, 116 N.M. 849. The force must be exercised against the person of another. *State v. Bernal*, 2006-NMSC-050, ¶ 28, 140 N.M. 644 ("Robbery is not merely a property crime, but a crime against a person."). Further, courts must consider the *degree* of force employed in the commission of the theft in evaluating conviction under the statute. *State v. Clokey*, 1976-NMSC-035, ¶ 3, 89 N.M. 453 ("The question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion.").

New Mexico robbery requires more than mere *de minimis* force. The reasoning of two New Mexico state court decisions distinguishing robbery from the less serious crime of larceny makes this clear. In *State v. Curley*, the New Mexico Court of Appeals held that the defendant was entitled to the lesser included offense of larceny, because a jury could have found that he took a purse by surprise from a victim who was not resisting. 1997 NMCA-038, ¶ 18, 123 N.M. 295. The court held that "when no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery." *Id.* ¶ 6. Theft constitutes robbery only where it is accomplished using "force necessary to overcome any resistance." *Id.* ¶ 18.

The force element of New Mexico robbery rests on the principle that robbery is not merely a property crime; it is a crime against a person. This distinguishes it from larceny. *Id.* ¶ 11. Therefore, courts should construe the "resistance of attachment" requirement "in light of

the idea that robbery is an offense against the person, and something about that offense should reflect the increased danger to the person that robbery involves over the offense of larceny." *Id.* In determining whether the force requirement of robbery has been satisfied, courts should not focus exclusively on the "[s]ubtle differences in the amount of force used." *Id.* ¶ 13. The "reason for the distinction" between robbery and larceny—and the increased punishment—"is the increased danger to the person." *Id.* Therefore, "an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate." *Id.*

The reasoning of the Supreme Court of New Mexico in *State v. Bernal* is also instructive. 2006-NMSC-050. In that case, the Court held that the Double Jeopardy Clause is not offended by allowing, for a single act, separate charges for each victim "against whom violence or the threat of violence is separately used." *Id.* ¶¶ 27–28. As the Court found, "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence." *Id.* In other words, the force used to commit a robbery is that which puts the victim on notice of the theft and creates the possibility of a dangerous and violent confrontation. The rationale behind the force element of New Mexico robbery tracks that identified by the Tenth Circuit in defining a violent felony in *Ramon Silva*—the prohibited conduct constitutes a violent felony because it "could always lead to . . . substantial and violent contact." 608 F.3d at 672.

A recent decision of the Tenth Circuit, *United States v. Harris*, 844 F.3d 1260 (10th Cir. 2017), further compels my finding here. In *Harris*, the Tenth Circuit held that Colorado's robbery statute qualified as a violent felony under the force clause of the ACCA. *Id.* at 1262. In evaluating the ACCA's physical force requirement, the court found, "[i]t is important to keep in

mind why it was necessary for the Court [in *Johnson I*] to use the language" of "'*violent* force'" and "'strong physical force.'" *Id.* at 1264–65 (quoting *Johnson I*, 559 U.S. at 140–41). The Supreme Court, it noted, was "rejecting the government's argument that physical force means 'force' known in common law battery parlance"—that is, "even the slightest offensive touching." *Id.* at 1265. Though *Johnson I* described the force required to satisfy the physical force requirement as "'a substantial degree of force,'" or "'strong physical force,'" it did so in service of differentiating between mere *de minimis* force (the force required to violate the state law at issue in that case) and the greater degree of force required to satisfy the force clause. *Id.*

Turning to its evaluation of the force element of the Colorado robbery statute, the *Harris* court weighed heavily the language of a recent decision of the Colorado Supreme Court that discussed the distinction between larceny and robbery. *Id.* at 1266–67 (citing *People v. Borghesi*, 66 P.3d 93, 99–100 (Colo. 2003)). The additional requirement of violence—of "circumstances involving a danger to the person as well as a danger to property"—distinguishes Colorado robbery from the "property crime of larceny." *Id.* (internal quotation marks omitted). The *Harris* court further found that pre-*Borghesi* case law in the Colorado appellate courts, to the extent the cases upheld robbery convictions on less-than-violent force, was not controlling. *Id.* Based on its analysis, the Tenth Circuit also declined to follow several other circuits that have concluded that robbery does not meet the physical force requirement. *Id.* at 1267–68.

*Harris* illuminates the requisite analysis and reassures the result in the present case. The rationale of the Colorado court distinguishing larceny from robbery, on which the Tenth Circuit relied, mirrors that of the New Mexico courts in *Curley and Bernal*. Robbery is the more serious offense because, by requiring a taking from the person of another and requiring force sufficient

to put the victim on notice, it necessarily puts the victim at risk of a dangerous confrontation with the thief. The crime of robbery in New Mexico, as in Colorado, is designed to "punish the use of violence" and "protect citizens from violence." *Bernal*, 2006-NMSC-050, ¶¶ 27–28. True, the Colorado Supreme Court has supplied more explicit language on which the Tenth Circuit could base its interpretation of Colorado robbery's force element. Though Colorado robbery is perhaps the easier case, *Harris* provides additional support for the outcome in this case. New Mexico robbery qualifies as a violent felony under the force clause of the ACCA. Several other decisions of this District have reached the same conclusion.[18]

Manzanares's arguments to the contrary are not persuasive. He cites to state jurisprudence suggesting that "[t]he amount or degree of force is not the determinative factor" and "[t]he amount of force is immaterial." [Doc. 1] at 14–15 (quoting *State v. Martinez*, 1973-NMCA-120, ¶ 4, 513 P.2d 402; UJI 14-1620 NMRA, committee commentary). However, this language refers to the requirement that the force or violence be employed in the act of taking away the property. "The use or threatened use of force . . . . 'must be the lever by which the thing of value is separated' from the victim." *Martinez*, 1973-NMCA-120, ¶ 4 (quoting *State v. Baca*, 1971-NMCA-142, ¶ 5, 83 N.M. 184, 184). In *Martinez*, for example, the court did not need to consider the force employed during a fight between the defendant and victim that followed the theft in question because "the ripping of the [victim's] jacket pocket in grabbing the money, and knocking the victim against the railing, was a showing of sufficient use of force to

---

[18] *E.g.*, *Garcia*, 2017 WL 2271421, at *53–57; *United States v. Serrano*, 16-cv-0670 RB/WPL, [Doc. 16] at 4 (D.N.M. May 9, 2017); *United States v. Dean*, 16-cv-0289 WJ/LAM, [Doc. 17] at 6 (D.N.M. May 3, 2017); *Rhoads v. United States*, 16-cv-0325 JCH/GBW, [Doc. 20] at 11 (D.N.M. Apr. 5, 2017); *Hurtado v. United States*, 16-cv-0646 JAP/GJF, [Doc. 17] (D.N.M. Jan. 11, 2017). *But see United States v. King*, 16-cv-0501 MV/KK, [Doc. 18] at 29 (D.N.M. Mar. 31, 2017) (finding that New Mexico armed robbery does not qualify as a violent felony under the ACCA's force clause).

sustain the conviction." *Id.* ¶ 5. It is not that the court did not consider the degree of force used by the defendant; rather, in stating that the degree of force was not the "determinative factor," the court meant that it must evaluate *when* the force or violence was deployed by the defendant. *Id.* ¶¶ 4–5; *see also Lewis*, 1993-NMCA-165, ¶ 12 (the defendant's use of a weapon to "hold [the] victim at bay as he escaped" was not sufficient to satisfy the force requirement of the New Mexico robbery statute because the money itself had been "removed and separated from his person by stealth").

He cites *Curley* for the proposition that snatching an article of clothing, such as a pin, with just the amount of force required to remove it constitutes robbery; he subsequently cites the same case as holding that shoving a victim's shoulder suffices for robbery. [Doc. 1] at 15 (citing *Curley*, 1997-NMCA-038). The thrust of the holding in *Curley* is described *supra*; in finding that the defendant was entitled to an instruction on larceny, the court held that the force requirement hinged on the degree of force required to overcome resistance. 1997-NMCA-038, ¶ 18. Further, the court in *Curley* explicitly stated that applying only the force necessary to remove the item does not satisfy the force requirement of New Mexico robbery. *Id.* ¶ 6.

Manzanares also cites a number of cases for the proposition that a pickpocket's "jostling" of a victim in order to divert the victim's attention constitutes the force necessary to commit robbery. [Doc. 1] at 15. In fact, jostling a victim to divert his or her attention runs contrary to the definition of robbery that New Mexico courts set out in *Curley* and *Bernal*. As those cases make clear, the distinguishing feature of robbery under New Mexico law—as opposed to mere larceny—is the use of force necessary to overcome any resistance; where there is no possibility of resistance (as in pickpocket cases), there is no robbery. *See Curley*, 1997-NMCA-038, ¶ 18.

Furthermore, neither of the New Mexico cases Manzanares cites to support this point involved mere "jostling" to divert the victim's attention. In *State v. Martinez*, the defendant ripped the victim's pocket and knocked the victim against a railing. 1973-NMCA-120, ¶ 5. And in *State v. Segura*, the defendant grabbed the victim's bag and, while the victim held on to the bag as they engaged in an altercation, the victim lost her balance and fell to the ground. 1970-NMCA-066, ¶¶ 2–3, 81 N.M. 673. While the court noted in *Segura* that "evidence of jostling or causing the victim to fall" may constitute sufficient force for robbery, it did so in the context of a case in which the victim resisted and a physical confrontation ensued.

Finally, the other New Mexico cases Manzanares cites also demonstrate force or violence used in the defendants' confrontations with the victims. *See* [Doc. 1] at 15; *State v. Verdugo*, 2007-NMCA-095, ¶ 26, 142 N.M. 267 (holding, in a single sentence without further analysis, sufficient evidence of force existed where the defendant attempted to grab the victim's purse from around her arm and the victim "struggled to retain control" until the purse strap broke); *State v. Pitts*, 1985-NMCA-045, ¶ 16, 102 N.M. 747 (the defendant grabbed the victim and locked her into a cell).

Manzanares cites to a number of cases outside the Tenth Circuit holding that various state statutes, which he alleges are similar to the New Mexico robbery statute, do not meet the "physical force" requirement of § 924(e)(2)(B)(i). [Doc. 1] at 15–17. Again, I am not persuaded. Nearly all the cases to which Manzanares cites evaluate a state law, the force element of which is satisfied by the use of *de minimis* force. *Id.* (citing *United States v. Castro-Vazquez*, 802 F.3d 28, 37–38 (1st Cir. 2015) (robbery statute requires only "the slightest use of force"); *United States v. Dominguez-Maroyoqui*, 748 F.3d 918 (9th Cir. 2014) (prior assault conviction

did not qualify as a crime of violence under the force clause where conviction of assault could be obtained when the defendant "use[d] *any force whatsoever* against a federal officer") (emphasis in original); *United States v. Hollins*, 514 F. App'x 264, 267–68 (3d Cir. 2013) (Pennsylvania robbery statute was satisfied by "any amount of force applied to a person while committing a theft") (internal quotation marks omitted); *In re Sealed Case*, 548 F.3d 1085, 1090 (D.C. Cir. 2008) (robbery statute could be satisfied by using "the minimal level of force necessary to obtain property by sudden or stealthy seizure or snatching") (internal quotation marks omitted); *United States v. Moncrieffe*, 2016 WL 913391, at *16–19 (E.D.N.Y. Mar. 10, 2016) (New York robbery statute under which "any amount of force" satisfies the force element); *United States v. Bell*, 2016 WL 344749, at *9–10 (N.D. Cal. Jan. 28, 2016) (robbery statute required only as much force as required to snatch an item from the victim or the victim's clothes); *United States v. Litzy*, 2015 WL 5895199, at *4–5 (S.D.W. Va. Oct. 8, 2015) (force element of state statute could be satisfied "by a mere uninvited touch")).

Manzanares does cite to circuit decisions that have held that state statutes requiring comparable or more force than is required under the New Mexico robbery statute do not satisfy the "physical force" standard. [Doc. 1] at 16–17 (citing *United States v. Bilal*, 610 F. App'x 569, 569–70 (6th Cir. 2015) (assessing Ohio aggravated attempted robbery statute); *United States v. Montes-Flores*, 736 F.3d 357, 368–39 (4th Cir. 2013) (assessing South Carolina assault and battery of a high and aggravated nature); *United States v. Carmichael*, 408 F. App'x 769, 770 (4th Cir. 2011) (assessing North Carolina common law robbery)). As to the Ohio aggravated attempted robbery statute, however, as discussed *supra*, the Tenth Circuit has already reached a contrary opinion with respect to a similar statute. *Ramon Silva*, 608 F.3d at 670–71. In any

event, this Court is not bound by decisions from other circuits.  *See also Harris*, 844 F.3d at 1262 (recognizing that the circuits "have reached varying results" on the question of whether robbery statutes satisfy the force clause).

New Mexico robbery requires more than *de minimis* force—it requires force sufficient to put the victim on notice, thereby creating the possibility of a violent confrontation.  The conduct it criminalizes "always has the potential to lead to 'violent force,'" *Ramon Silva*, 608 F.3d at 670–71, and therefore it satisfies the physical force requirement of the force clause.  The additional requirement of a deadly weapon only bolsters this finding, though I need not consider whether conviction for armed robbery requires the use (as opposed to the mere possession) of a deadly weapon[19] to reach this conclusion.  New Mexico armed robbery qualifies as a violent felony under the force clause of the ACCA.

## VII. Conclusion

I find that Manzanares's prior convictions for New Mexico aggravated assault with a deadly weapon, aggravated battery, and armed robbery all satisfy the force clause of the ACCA, § 924(e)(2)(B)(i).  There is no realistic probability that the statutes would be applied to conduct falling outside the scope of the force clause.  Therefore, they qualify as violent felonies under the ACCA irrespective of the now-invalidated residual clause.  Any reliance on the unconstitutional residual clause was harmless.  Manzanares is not entitled to resentencing.  His motion should be denied.

---

[19] Judges within this district have reached different conclusions on this question.  *Compare, e.g., Rhoads v. United States*, 16-cv-0325 JCH/GBW, [Doc. 17] at 19–21 (D.N.M. Jan. 25, 2017) (finding support in New Mexico case law for the proposition that conviction for armed robbery requires use of the weapon in the commission of the robbery), *with United States v. King,* 16-cv-0501 MV/SMV, [Doc. 12] at 17–20 (D.N.M. Dec. 1, 2016) (finding that conviction for armed robbery requires only possession, and not necessarily use, of the deadly weapon during commission of the crime).

**IT IS THEREFORE RECOMMENDED** that Defendant Archie Manzanares's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 35; CV Doc. 1] be **DENIED** and that case No. 16-cv-0599 WJ/SMV be **DISMISSED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**