# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

v.                               No.    **12-cr-1563 WJ**
                                                    **16-cv-0599 WJ/SMV**

ARCHIE MANZANARES,

     **Defendant.**

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 53; CV Doc. 21] ("PF&RD") issued September 6, 2017. On reference by the undersigned, [CV Doc. 2], the Honorable Stephan M. Vidmar, United States Magistrate Judge,[1] recommended denying Defendant Archie Manzanares's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 35; CV Doc. 1]. Manzanares objected to the PF&RD on November 6, 2017. [CR Doc. 57; CV Doc. 25]. On de novo review of the portions of the PF&RD to which Manzanares objects, the Court will overrule the objections, adopt the PF&RD, deny Manzanares's motion, and dismiss case number 16-cv-0599 WJ/SMV with prejudice.

## I. Background

On June 27, 2012, Manzanares was charged via indictment with being a felon in possession of a firearm/ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1).

---

[1] Throughout his objections, Manzanares refers to Judge Vidmar as a "magistrate." *E.g.*, [CV Doc. 25] at 1, 2, 15, 16, 21, 23, 26, 28, 31. The appropriate title is "magistrate judge." *See* 28 U.S.C. § 636.

Presentence Report ("PSR") at 4. On April 1, 2013, he was charged via information with possession of heroin, in violation of 21 U.S.C. § 844(a). *Id.* He pleaded guilty to both charges on April 1, 2013. *Id.* The plea bargain Manzanares negotiated with the government hinged on whether he qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"). If he was found to be an armed career criminal, Manzanares would stipulate to a sentence of 180 months. *Id.* If he was found not to be an armed career criminal, Manzanares would be permitted to withdraw from the plea. *Id.*

United States Probation and Pretrial Services prepared his PSR. The PSR provided that Manzanares qualified as an armed career criminal under the ACCA because he had at least three prior convictions for violent felonies or serious drug offenses. *Id.* at 7. In applying the ACCA enhancement, the PSR did not list which prior felony convictions constituted the "violent felonies" or "serious drug offenses." *Id.* Elsewhere in the PSR, however, Manzanares's prior felony convictions are listed. *Id.* at 5. Among them are aggravated assault with a deadly weapon, aggravated battery, and armed robbery, all in New Mexico. *Id.* Likewise, the PSR lists his entire criminal history in a separate section, though it does not indicate which of the offenses were felonies (as opposed to misdemeanors), or which were relied on as predicate offenses in applying the ACCA enhancement. *See id.* at 8–12.

With the armed career criminal enhancement, Manzanares's offense level was 34. *Id.* at 7. Based on a downward adjustment for acceptance of responsibility, his total offense level was 31, with a criminal history category of VI and a guideline imprisonment range of 188–235 months. *Id.* at 8, 19. On July 2, 2013, the Court held a sentencing hearing. *See* [CR Doc. 33]. Neither party objected to the PSR. *See id.* at 3. The Court accepted the plea agreement and

found that Manzanares qualified as an armed career criminal under the ACCA. *Id.* at 5. The

Court sentenced him to 180 months' imprisonment pursuant to the plea agreement. *Id.*

Manzanares did not appeal his sentence. The instant case is his first motion under § 2255.

## II. <u>Motions under § 2255 and *Johnson II*</u>

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction

may "move the court . . . to vacate, set aside or correct the sentence" if it "was imposed in

violation of the Constitution or laws of the United States."

In *Johnson v. United States* ("*Johnson II*"), 135 S. Ct. 2551, 2557 (2015), the

Supreme Court held that the so-called "residual clause" of the definition of "violent felony" in

the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally

vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one
> year . . . that —
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or*
> *otherwise involves conduct that presents a serious potential risk of*
> *physical injury to another*.

*Id.* (emphasis added). The closing words of this definition, italicized above, have come to be

known as the "residual clause." Subsection (i) is referred to as the "force clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding

what kind of conduct the 'ordinary case' of a crime involves." *Johnson II*, 135 S. Ct. at 2557.

That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement

by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary

case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the ACCA's residual

clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson II* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

### III. Judge Vidmar found that Manzanares's prior convictions qualified as violent felonies irrespective of the now-invalidated residual clause and recommended that his motion be denied.

Manzanares had at least three prior felony convictions that were determined to qualify as violent felonies under § 924(e)(2)(B) of the ACCA, triggering that provision's sentencing enhancement.[2] *See* PSR at 5, 7; [CR Doc. 2] at 1. Manzanares challenged the application of the ACCA sentencing enhancement. He argued that the government had waived the right to argue that certain of his prior convictions qualified as violent felonies under those portions of § 924(e)(2)(B) that remained intact in the wake of *Johnson II*. [Doc. 1][3] at 6–9. In the alternative, Manzanares contended that his prior New Mexico convictions for aggravated assault

---

[2] The record showed a discrepancy as to the precise number of Manzanares's prior felony convictions: his PSR listed six, but his charging document listed five. *Compare* PSR at 5, *with* [CR Doc. 2] at 1. Judge Vidmar noted that this discrepancy was immaterial because the conviction not listed in the indictment was not one of the three on which the government relied for the ACCA sentencing enhancement. [CV Doc. 21] at 4 n.2.

[3] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 16-cv-0599 WJ/SMV.

with a deadly weapon, aggravated battery, and armed robbery[4] could have qualified as violent felonies (and thus, counted toward his armed career criminal designation) only under the now-invalidated residual clause. [Doc. 1] at 9–24. He argued he was therefore entitled to be resentenced without application of the ACCA enhancement.

The government responded that it had not waived the right to argue that Manzanares's prior felony convictions qualified under the still-extant clauses of § 924(e)(2)(B). [Doc. 10] at 14–15. It contended that because Manzanares did not object to the PSR or imposition of the ACCA enhancement at sentencing, "the Court must assume that it relied upon *all*" of his qualifying prior convictions. *Id.* at 15 (emphasis added). The government further argued that each of the three prior felony convictions qualified under the force clause of the ACCA. *Id.* at 3–14.

Judge Vidmar found that (1) the government had not waived the right to argue that Manzanares's prior convictions qualified under those portions of § 924(e)(2)(B) that survived *Johnson II*, and (2) Manzanares's prior convictions for New Mexico aggravated assault with a deadly weapon, aggravated battery, and armed robbery qualified as violent felonies, irrespective of the unconstitutional residual clause. [Doc. 21]. Therefore, he recommended that Manzanares not be resentenced and that his § 2255 motion be denied.

---

[4] Though the PSR never indicated which three of his prior convictions were the qualifying felonies, the parties apparently agreed that these were the three at issue. Additionally, in a memorandum filed after Manzanares filed the instant motion, the United States Probation Office identified these three prior convictions as those that "meet the definition of violent felony, without the use of the residual clause." [Doc. 7].

**A.** **Judge Vidmar found that the United States had not waived the right to argue that Manzanares's prior convictions qualified as violent felonies under the force clause of the ACCA.**

Judge Vidmar first addressed the threshold issue raised by Manzanares—whether the government had waived the right to argue that certain of his prior convictions still qualified as violent felonies under § 924(e)(2)(B) in the wake of *Johnson II*. [Doc. 21] at 6–10. Neither the PSR nor the Court at sentencing expressly stated which of Manzanares's prior felony convictions qualified as violent felonies, or which clause of § 924(e)(2)(B) the convictions fell under (i.e., the so-called "force clause," the "enumerated clause," or the "residual clause"). *Id.* at 6. Manzanares contended that, by failing to object at the time of his sentencing, the government waived the right to later identify which prior convictions were qualifying ACCA predicate offenses. *Id.* Manzanares argued it would be "fundamentally unfair" to allow the government to "swap out unidentified ACCA predicate offenses" on collateral review of his ACCA enhancement. *Id.*

Judge Vidmar found that Manzanares had cited no case law in support of his argument that the government could not rely on prior convictions not specifically referenced as ACCA predicates in the PSR or at sentencing. The case from the Eleventh Circuit on which Manzanares relied actually contravened his position. *Id.* at 6–7 (citing *McCarthan v. Warden*, 811 F.3d 1237 (11th Cir. 2016), *rev'd en banc on other grounds sub nom. McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (2017)). The court in *McCarthan* had noted that, in general, defendants are "entitled to know the specific convictions on which an ACCA enhancement is recommended and imposed." *Id.* at 7–8 (quoting *McCarthan*, 811 F.3d at 1253). But where the defendant had failed to object to the PSR or at sentencing, the court reviewing his

§ 2254 petition "must . . . assume that the district court relied on all of [the defendant's] ACCA-qualifying convictions in imposing" his ACCA enhancement. *Id.* at 8 (quoting *McCarthan*, 811 F.3d at 1254). *McCarthan* put the onus on the *defendant*, not the government, to object to the PSR or at sentencing where the ACCA enhancement was applied and the qualifying prior convictions not explicitly identified. Absent any such objection, the reviewing court must presume that the sentencing court relied on *all* ACCA-qualifying convictions.[5] Judge Vidmar found that a recent decision from this District further compelled the finding that the government had not waived the right to rely on Manzanares's prior convictions. *Id.* at 9–10 (citing *United States v. Garcia*, No. 16-cv-0240 JB/LAM, 2017 WL 2271421, at *19–21 (D.N.M. Jan. 31, 2017) ("There is no dispute that [the defendant] has a robbery conviction, and the conviction's existence cannot be waived. The Court can consider it. It does not disappear. What [the sentencing judge] did with it, or did not do with it, ten years ago is irrelevant.")). The government was not foreclosed, Judge Vidmar found, from arguing that any of the qualifying prior felony convictions listed in Manzanares's PSR still qualified as ACCA predicate offenses even absent the unconstitutional residual clause.

### B. Judge Vidmar found that Manzanares's predicate offenses qualified as violent felonies under the force clause of the ACCA.

#### 1. The Force Clause of § 924(e)(2)(B)

The "force clause" of § 924(e)(2)(B) provides that an underlying conviction is a violent felony where it "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). To determine whether a prior conviction

---

[5] Judge Vidmar noted that *McCarthan* did discuss the circumstances under which the government's failure to object to the PSR or at sentencing would constitute waiver. [Doc. 21] at 8 n.5 (citing *McCarthan*, 811 F.3d at 1250 n.8). He found, however, that such circumstances were inapplicable to the facts of this case. *Id.*

qualifies as a violent felony under the force clause, courts compare § 924(e)(2)(B)(i) with the elements of the underlying statute of conviction.

Specifically, courts must compare the force required for a conviction of the predicate offense against the physical force requirement of § 924(e)(2)(B)(i). Courts must determine whether the least culpable conduct criminalized by the underlying offense—e.g., the least amount of force required to sustain a conviction for New Mexico aggravated assault with a deadly weapon—meets the physical force requirement of the force clause. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts are encompassed by [the force clause]." (last set of brackets added) (internal quotation marks omitted)). This inquiry requires application of both federal and state law. Federal law defines the meaning of the phrase "use, attempted use, or threatened use of physical force" in § 924(e)(2)(B)(i). *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017). And state law defines the substantive elements of the crime of conviction. *Id.*; *United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009). In discerning the level of force that gives rise to conviction under the predicate offense, there must be a "*realistic probability*, not a theoretical possibility," that the statute would apply to the conduct contemplated. *Rivera-Oros*, 590 F.3d at 1133 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

In undertaking this comparison, courts generally apply the "categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). That is, courts look only to the statutory definition of the predicate offense, while ignoring the particular facts of the case. *Id.* If

the statute of conviction "sweeps more broadly" than the force clause (i.e., if conviction could result without the use of "physical force," as federal law defines that term), the prior conviction cannot qualify as an ACCA predicate, irrespective of whether the defendant's actual conduct in committing the crime involved the use of physical force. *See id.*

Some statutes, however, have a more complicated structure and require a slightly different approach. A single statute may be "divisible"—it may list elements in the alternative—and thereby define multiple crimes. *Id.* at 2281. When a statute defines multiple crimes by listing alternative elements, courts undertake the "modified categorical approach" to determine *which* of the multiple alternative elements listed in the statute applied to convict the defendant. *Id.* Under the modified categorical approach, a sentencing court looks to the record of conviction (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court may then compare the physical force required for conviction under that crime, as the categorical approach commands, with the physical force requirement of the force clause. *See id.*

The Supreme Court has provided guidance for determining whether a statute is indivisible or divisible and, thus, whether to implement the modified categorical approach first or proceed directly to the categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2016). The central question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple different crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it enumerates various factual *means* of committing a single element (i.e., an indivisible statute, requiring the categorical approach). *Id.* at 2249–50. If a state court decision "definitively answers the question," then a sentencing judge "need only follow what it

says." *Id.* at 2256. Or, "the statute on its face may resolve the issue." *Id.* If statutory alternatives carry different punishments, then they must be elements (and, thus, the statute divisible, triggering the modified categorical approach). *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.*

## 2. Manzanares's Prior Convictions

In *Johnson v. United States* ("*Johnson I*"), 559 U.S. 133, 138–40 (2010), the Supreme Court interpreted "physical force" under the force clause of § 924(e)(2)(B) to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. The Court offered this interpretation in the course of holding that the force required for conviction under a state battery statute—"*any* intentional physical contact, no matter how slight"—was less than the ACCA's physical force requirement. *Id.* at 138 (internal quotation marks omitted). In other words, "physical force" under the force clause means more than de minimis touching. *See Harris*, 844 F.3d at 1264–65 ("It is important to keep in mind why it was necessary for the Court [in *Johnson I*] to use the language" of "*violent* force" and "strong physical force"—namely, because the Court "was rejecting the government's argument that physical force means . . . . even the slightest offensive touching." (internal quotation marks omitted)).

Judge Vidmar considered whether each of Manzanares's prior qualifying convictions required the degree of force necessary to satisfy the "physical force" requirement of § 924(e)(2)(B)(i).[6] He found that they did.

### *Aggravated Assault with a Deadly Weapon*

Manzanares was convicted of aggravated assault, NMSA 1978, § 30-3-2. That statute provides:

> Aggravated assault consists of either:
>
> A. unlawfully assaulting or striking at another with a deadly weapon;
>
> B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or
>
> C. willfully and intentionally assaulting another with intent to commit any felony.

§ 30-3-2. There was no dispute that Manzanares was convicted of aggravated assault with a deadly weapon, § 30-3-2(A). [Doc. 21] at 15.

Judge Vidmar found that Tenth Circuit precedent compelled the finding that § 30-3-2(A) satisfied the "physical force" requirement of the force clause. *Id.* at 15–17. In *United States v. Ramon Silva*, 608 F.3d 663, 670–71 (10th Cir. 2010), the Tenth Circuit held that "apprehension causing" aggravated assault with a deadly weapon was a violent felony under the ACCA's force clause. Subsequently, in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016), the Tenth Circuit held that § 30-3-2(A), aggravated assault with a deadly weapon, was

---

[6] The government did not contend that any of Manzanares's prior convictions qualified under the enumerated clause of § 924(e)(2)(B). The only issue, then, was whether each qualified under the force clause.

categorically a "crime of violence" under the force clause, no matter which theory of the underlying simple assault applied. *Id.* at 1250. After determining that the New Mexico aggravated assault statute was divisible, the court found that commission of aggravated assault with a deadly weapon required the *use* (and not just the mere possession) of a deadly weapon in carrying out the assault. *Id.* Employing a deadly weapon in an assault "necessarily threatens the use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'" *Id.* (quoting *Johnson I*, 559 U.S. at 140). Therefore, the court concluded, New Mexico aggravated assault with a deadly weapon was categorically a crime of violence.[7]

Manzanares argued that a recent decision of the New Mexico Court of Appeals, *State v. Branch*, 2016-NMCA-071, 387 P.3d 250, undercut the reasoning of *Ramon Silva* and *Maldonado-Palma* and compelled a different outcome. [Doc. 21] at 17. Manzanares argued that, per the reasoning of *Branch*, assault in New Mexico did not require proof of the defendant's intent to assault the victim—only that the victim reasonably believed he or she was in danger. *Id.* (citing [Doc. 19] at 2). He argued that the Tenth Circuit's recent decisions were wrongly decided because they rested on the principle that the use of physical force must be "intentional against the person of another." *Id.* (citing [Doc. 19] at 4). Judge Vidmar rejected this argument. He found he was bound by the Tenth Circuit's decisions in *Ramon Silva* and *Maldonado-Palma*. *Id.* *Branch* was decided before *Maldonado-Palma* and therefore did not undermine the precedential value of that decision. *Id.*; *see also United States v. Miera*, 2013 WL 6504297, at *18 (D.N.M. Nov. 22, 2013) (questioning the Tenth Circuit's opinion in *Ramon Silva* but

---

[7] Although the court in *Maldonado-Palma* was evaluating the force clause of United States Sentencing Guidelines § 2L1.2, Judge Vidmar found that its holding applied equally to the identically worded force clause of the ACCA's definition of violent felony. [Doc. 21] at 16 (citing *Maldonado-Palma*, 839 F.3d at 1248; *Ramon Silva*, 608 F.3d at 671; *United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016)).

concluding that the court "is not, however, free to disregard the majority's conclusion that aggravated assault with a deadly weapon in New Mexico is a violent felony" under the force clause of the ACCA). Judge Vidmar concluded that New Mexico aggravated assault with a deadline weapon, § 30-3-2(A), qualified as a violent felony under the force clause of the ACCA, 18 U.S.C. § 924(e)(2)(B).

### *Aggravated Battery*

Manzanares was also convicted of aggravated battery, NMSA 1978, § 30-3-5. That statute provides:

> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
>
> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
>
> C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

§ 30-3-5. Judge Vidmar first found that § 30-3-5 was divisible into its respective misdemeanor and felony subsections because statutory alternatives carrying different penalties "must be elements."[8] [Doc. 21] at 18 (quoting *Mathis*, 136 S. Ct. at 2256). Applying the modified

---

[8] Manzanares challenged the government's position that the divisibility question should be decided and the modified categorical approach applied. He argued, "If the offense is not categorically a [violent felony], then the court does not use the modified categorical approach to evaluate it. In other words, because the statue is overly broad and indivisible as to the unlawful touch element, the modified categorical approach is not applied." [Doc. 19] at 8. Judge Vidmar rejected this apparent suggestion that because simple battery is a component of aggravated battery, the divisibility question is irrelevant, because simple battery does not require *Johnson I*-level physical force. [Doc. 21] at 18 n.11. He found that Manzanares's analysis was mistaken and the divisibility question necessarily

categorical approach, he found that Manzanares was convicted under subsection C, the felony version of the statute.[9] *Id.* at 19.

Having concluded that Manzanares was convicted of felony aggravated battery, Judge Vidmar compared the elements of § 30-3-5(C) against the force clause of § 924(e)(2)(B). Conviction under § 30-3-5(C) required proof that the defendant committed a battery (1) that inflicted great bodily harm, (2) with a deadly weapon, or (3) in a manner whereby great bodily harm could be inflicted. *Id.* at 19–20 (citing § 30-3-5(C); UJI 14-322 NMRA; UJI 14-323 NMRA). "Great bodily harm," under New Mexico law, was "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." *Id.* at 20 (citing NMSA 1978, § 30-1-12(A)). And a "deadly weapon" was defined as "any firearm," "any weapon which is capable of producing death or great bodily harm," or "any other weapons with which dangerous wounds can be inflicted." *Id.* (citing § 30-1-12(B)). Moreover, aggravated battery with a deadly weapon in New Mexico required the *use* of the deadly weapon. *Id.* (citing UJI 14-322 (instructing that aggravated battery with a deadly weapon requires proof that the defendant "touched or applied force to" the victim with a deadly weapon and that "[t]he defendant *used*" a deadly weapon (emphasis added))).

---

preceded a comparison of the elements of the crime of conviction against the force clause. *Id.* (citing *Mathis*, 136 S. Ct. at 2256 (characterizing the divisibility question ("elements or means?") as the "threshold inquiry")).

[9] It was not clear to Judge Vidmar whether Manzanares genuinely contested that he was convicted of the felony, rather than the misdemeanor, version of aggravated battery. [Doc. 21] at 19. Neither party had submitted documentation of his prior conviction beyond the PSR, and Manzanares cited case law providing that "a court may not use [a PSR] to resolve a conviction's ambiguities." *Id.* (quoting *United States v. Hays*, 526 F.3d 674, 678 (10th Cir. 2008)). To the extent Manzanares was contesting that he was convicted of felony aggravated battery, Judge Vidmar took judicial notice of the public record of his conviction, which showed that he was convicted of felony aggravated battery, § 30-3-5(C). *Id.* at 19 & n.14.

Judge Vidmar found that the least culpable conduct under § 30-3-5(C) necessarily involved the use or threatened use of physical force—"force capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson I*, 559 U.S. at 140). Although the Tenth Circuit has not decided this specific question, it has evaluated similar statutes. *Id.* In *United States v. Treto-Martinez*, the Tenth Circuit held that Kansas aggravated battery satisfied the force clause of the Guidelines.[10] 421 F.3d 1156, 1160 (10th Cir. 2005). Conviction under one prong of the statute required "physical contact . . . whereby great bodily harm, disfigurement or death can be inflicted." *Id.* "It is clear," the court held, "that a violation of this provision is . . . sufficient to satisfy" the force clause. *Id.* "No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.'" *Id.* Judge Vidmar also looked to recent Tenth Circuit decisions interpreting assault statutes. *Id.* at 21 (citing *Maldonado-Palma*, 839 F.3d at 1249–50 (the use of a weapon "capable of producing death or great bodily harm" "necessarily threatens the use of physical force"); *Ramon Silva*, 608 F.3d at 670–71 (even though conviction could result without any actual physical contact against the victim, the conduct criminalized "could always lead to . . . substantial and violent contact, and thus . . . would always include as an element the threatened use of violent force" (internal quotation marks omitted)); *United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016) (noting that "regardless of the type of dangerous weapon that is employed by a particular defendant, the

---

[10] Judge Vidmar acknowledged that *Treto-Martinez* pre-dated *Johnson I* but noted that the court in *Treto-Martinez* did not apply a lesser standard of "physical force" in interpreting the force clause. [Doc. 21] at 20 n.15. Therefore, it did not appear to Judge Vidmar that the precedential value of *Treto-Martinez* was diminished by *Johnson I*. *Id.*

use of a dangerous weapon during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause" (internal quotation marks omitted))).

Conviction under § 30-3-5(C), Judge Vidmar found, required more than de minimis force—it required the intent to injure and commission in a manner whereby great bodily harm was inflicted, where death or great bodily harm could have been inflicted, or where a deadly weapon was used. *Id.* at 22. A battery committed in a manner that could inflict great bodily harm necessarily required "force capable of causing physical pain or injury." *Id.* (citing *Johnson I*, 559 U.S. at 140; *Treto-Martinez*, 421 F.3d at 1160). Likewise, given the holding of *Maldonado-Palma* and its predecessors, a battery committed with the use of a deadly weapon "always constitutes a sufficient threat of force to satisfy the [force] clause." *Id.* (quoting *Taylor*, 843 F.3d at 1224 (internal quotation marks omitted)). Judge Vidmar found that the additional requirements of felony aggravated battery—essentially, that serious bodily injury did or could have occurred—put the statute squarely in the range of conduct that the Tenth Circuit has found to satisfy the physical force requirement of the force clause.

Manzanares's arguments to the contrary were unpersuasive. *Id.* at 22–23. He argued that conviction under the aggravated battery statute could result from mere "unlawful touching, however slight." [Doc. 19] at 6; *see also* [Doc. 1] at 22–23. Because "[s]imple battery is a necessary element of aggravated battery," he contended, any unlawful touch would satisfy the battery element, and no more force was required for conviction of the greater offense of aggravated battery. [Doc. 19] at 5. But Judge Vidmar noted that Manzanares cited no case that supported his argument. [Doc. 21] at 22–23. His citations to cases analyzing "simple" battery, rather than felony aggravated battery, were inapposite. *Id.* And the cases he cited that did

actually analyze the *aggravated* battery statute indisputably involved the use of physical force. *Id.* at 23. Manzanares ignored the plain language of the statute, which explicitly required more than mere touching, and cited no authority suggesting otherwise. *Id.*

Judge Vidmar likewise rejected Manzanares's reliance on two Tenth Circuit cases, finding that both cases were readily distinguishable. *Id.* (citing *United States v. Hays*, 526 F.3d at 678 (Wyoming battery statute did not satisfy the force clause where conviction could result from "unlawfully touching someone in a rude, insolent or angry manner"—i.e., "any contact, however slight"); *United States v. Barraza-Ramos,* 550 F.3d 1246, 1249–51 (10th Cir. 2008) (Florida aggravated battery statute, which criminalized battery against pregnant women, did not satisfy the force clause because it could be violated by merely "touching" a pregnant woman against her will)). Neither case contemplated a battery statute with the additional requirements of the intent to injure *and* commission (1) in a manner that causes great bodily harm, (2) with the use of a deadly weapon, or (3) in a manner whereby great bodily harm could be inflicted. These additional requirements distinguished New Mexico aggravated battery from the statutes in those cases. New Mexico felony aggravated battery, § 30-3-5(C), qualified as a violent felony under the force clause of the ACCA.

### *Armed Robbery*

Finally, Judge Vidmar considered Manzanares's prior conviction for armed robbery. The New Mexico robbery statute provides:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.
>
> Whoever commits robbery is guilty of a third degree felony.

> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

§ 30-16-2. Judge Vidmar found that the statute was divisible into simple robbery, a third degree felony, and armed robbery, a first degree felony. [Doc. 21] at 24. Manzanares was convicted of armed robbery. *Id.*

Judge Vidmar then evaluated whether New Mexico armed robbery required the degree of physical force necessary to satisfy the force clause of the ACCA. *Id.* at 24–32. Without resolving whether the additional requirement of being armed with a deadly weapon during the commission of a robbery necessitates the use of force, he found that New Mexico robbery necessarily required the use of *Johnson I*-level physical force, irrespective of whether the defendant was armed.

Judge Vidmar found that the New Mexico robbery statute contained a force element: the theft must be committed "by use or threatened use of force or violence." *Id.* at 25 (quoting § 30-16-2). "The use of force, violence, or intimidation is an essential element of robbery." *Id.* (quoting *State v. Lewis*, 1993-NMCA-165, ¶ 8, 116 N.M. 849). The force must be exercised against the person of another. *State v. Bernal*, 2006-NMSC-050, ¶ 28, 140 N.M. 644 ("Robbery is not merely a property crime, but a crime against a person."). Further, he found, courts must consider the *degree* of force employed in the commission of the theft in evaluating conviction under the statute. *Id.* (citing *State v. Clokey*, 1976-NMSC-035, ¶ 3, 89 N.M. 453 ("The question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion.")).

Judge Vidmar concluded that New Mexico robbery required more than mere de minimis force. *Id.* at 25–26. He was guided by the reasoning of two New Mexico state court decisions distinguishing robbery from the less serious crime of larceny. In *State v. Curley*, the New Mexico Court of Appeals noted that theft constitutes robbery only where it is accomplished using "force necessary to overcome any resistance." *Id.* at 25 (quoting *Curley*, 1997 NMCA-038, ¶ 18, 123 N.M. 295). The court noted that courts should construe the "resistance of attachment" requirement "in light of the idea that robbery is an offense against the person, and something about that offense should reflect the increased danger to the person that robbery involves over the offense of larceny." *Id.* at 25–26 (quoting *Curley*, 1997-NMCA-038, ¶ 11). The "reason for the distinction" between robbery and larceny—and the increased punishment— "is the increased danger to the person." *Id.* (quoting *Curley*, 1997-NMCA-038, ¶ 13). Therefore, "an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate." *Id.* (quoting *Curley*, 1997-NMCA-038, ¶ 13).

The Supreme Court of New Mexico clarified this rationale in *State v. Bernal*, 2006-NMSC-050. As the Court found, "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence." [Doc. 21] at 26 (quoting *Bernal*, 2006-NMSC-050, ¶¶ 27–28). In other words, Judge Vidmar found, the force used to commit a robbery is that which puts the victim on notice of the theft and creates the possibility of a dangerous and violent confrontation. *Id.* The rationale behind the force element of New Mexico robbery, he found, tracks that identified by the Tenth Circuit in defining a violent felony in

*Ramon Silva*—the prohibited conduct constitutes a violent felony because it "could always lead to . . . substantial and violent contact." *Id.* (quoting *Ramon Silva*, 608 F.3d at 672).

Judge Vidmar found that the Tenth Circuit's decision in *United States v. Harris*, 844 F.3d 1260, further compelled his findings. [Doc. 21] at 26–28. In evaluating the force element of Colorado robbery, the *Harris* court weighed heavily the language of a recent decision of the Colorado Supreme Court that discussed the distinction between larceny and robbery. *Id.* at 27 (citing *Harris*, 844 F.3d at 1266–67). The additional requirement of violence—of "circumstances involving a danger to the person as well as a danger to property"—distinguished Colorado robbery from the "property crime of larceny." *Id.* (quoting *Harris*, 844 F.3d at 1266– 67). To the extent that earlier decisions of the Colorado appellate courts upheld robbery convictions on less-than-violent force, such case law was not controlling. *Id.* Judge Vidmar found that the rationale of the Colorado Supreme Court distinguishing robbery from larceny, on which the *Harris* court relied, mirrored that of the New Mexico courts in *Curley* and *Bernal*. *Id.* at 27–28. The crime of robbery in New Mexico, as in Colorado, was designed to "punish the use of violence" and "protect citizens from violence." *Id.* at 28 (quoting *Bernal*, 2006-NMSC-050, ¶¶ 27–28). New Mexico robbery, Judge Vidmar found, qualified as a violent felony under the force clause of the ACCA.

Judge Vidmar analyzed Manzanares's authorities and arguments to the contrary and found them to be inapposite or otherwise unpersuasive. *Id.* at 28–32. Manzanares relied, for example, on language in New Mexico case law that referred not to the *degree* of force used, but rather to the *time* at which the force or violence was deployed. *Id.* at 28–29 (citing *State v. Martinez*, 1973-NMCA-120, ¶¶ 4–5, 513 P.2d 402; *Lewis*, 1993-NMCA-165, ¶ 12). Such

language was not pertinent to the consideration of the degree of force required to commit robbery in New Mexico.

Judge Vidmar likewise found that the authorities Manzanares cited for the proposition that New Mexico robbery can be accomplished with de minimis force were unavailing. *Id.* at 29–30 (citing *Curley*, 1997-NMCA-038; *Martinez*, 1973-NMCA-120; *State v. Segura*, 1970-NMCA-066, 81 N.M. 673; *State v. Verdugo*, 2007-NMCA-095, ¶ 26, 142 N.M. 267; *State v. Pitts*, 1985-NMCA-045, ¶ 16, 102 N.M. 747). He found that none of the cases Manzanares cited actually upheld a robbery conviction on de minimis force, and that any dicta in the cases suggesting as much ran counter to the principles set out in *Curley* and *Bernal*. *Id.* Finally, Judge Vidmar was not persuaded by the case law Manzanares cited from outside the Tenth Circuit. *Id.* at 30–31; *see also Harris*, 844 F.3d at 1262 (recognizing that the circuits "have reached varying results" on the question of whether robbery statutes satisfy the force clause).

Judge Vidmar found that Manzanares's prior convictions for New Mexico aggravated assault with a deadly weapon, aggravated battery, and armed robbery all qualified as violent felonies irrespective of the unconstitutional residual clause. He therefore recommended that Manzanares's motion be denied.

## IV. <u>Standard of Review for Objections to Magistrate Judge's PF&RD</u>

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. 2121 E. 30th St.*,

73 F.3d 1057, 1060 (10th Cir. 1996). To preserve an issue, a party's objections to a PF&RD must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

# V. Analysis

Manzanares objects to Judge Vidmar's proposed findings and recommended disposition. [Doc. 25]. He objects to the findings that each of his three prior New Mexico convictions for aggravated assault with a deadly weapon, aggravated battery, and armed robbery requires the use of *Johnson I*-level force, such that they qualify as violent felonies under the force clause of § 924(e)(2)(B).[11] On de novo review, the Court agrees with Judge Vidmar that all three prior convictions qualify as violent felonies under the force clause of § 924(e)(2)(B). Manzanares's objections will be overruled and his motion will be denied.

### *Aggravated Assault with a Deadly Weapon*

Manzanares objects to Judge Vidmar's finding that New Mexico aggravated assault with a deadly weapon, § 30-3-2(A), qualifies as a violent felony under the force clause of § 924(e)(2)(B). As discussed *supra*, Judge Vidmar found that the Tenth Circuit's recent decision in *Maldonado-Palma* controlled the outcome here. [Doc. 21] at 15–17.

Manzanares urges in his objections, as he did in his briefing on the motion, that *Maldonado-Palma* is not controlling. He suggests that *Maldonado-Palma* and the Tenth Circuit's earlier decision in *Ramon Silva* misinterpreted § 30-3-2(A) in two material ways

---

[11] Manzanares did not object to Judge Vidmar's finding that the government had not waived the right to argue that these prior convictions qualified as violent felonies under the force clause of § 924(e)(2)(B).

that bear on whether the statute satisfies the force clause of § 924(e)(2)(B). First, he contends that conviction under § 30-3-2(A) can result from no more than a person insulting another (i.e., committing an assault) while possessing a weapon, and that the provision does not require that the weapon actually be used in the commission of the assault. [Doc. 25] at 2, 6–8 (discussing New Mexico case law). Because the court in *Maldonado-Palma* interpreted § 30-3-2(A) to require that the deadly weapon be "actively employed in committing the assault"—and it was this *use* of the deadly weapon that satisfied the physical force requirement of the force clause— that case was wrongly decided, Manzanares argues. *Id.* at 3–6 (quoting *Maldonado-Palma*, 839 F.3d at 1250). He suggests that the Tenth Circuit failed to follow the categorical approach set out in *Mathis* by improperly reading "beyond the statute's plain language" to find that § 30-3-2(A) required "use" of the weapon. *Id.* at 4. Second, Manzanares maintains that § 30-3-2(A) does not require "*any* intent with respect to the victim," and thus does not require the use of force "*against* the person of another." *Id.* at 8; *see also id.* at 8–11 (citing *Branch*, 2016-NMCA-071; *State v. Manus*, 1979-NMSC-035, 93 N.M. 95, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, 98 N.M. 786). He argues that *Ramon Silva* and *Maldonado-Palma* rest on "an incorrect idea of the elements" of § 30-3-2(A). *Id.* at 13.

Manzanares's objections are without merit and will be overruled. As an initial matter, the court in *Maldonado-Palma* did not, as Manzanares suggests, sidestep the categorical approach mandated by the Supreme Court. The categorical approach directs courts to "focus solely on . . . the elements of the crime of conviction" to determine whether the crime of conviction qualifies as a violent felony—in the context of the force clause, whether the crime of conviction necessarily requires the use of *Johnson I*-level "physical force." *See Mathis*, 136 S. Ct. at 2248.

23

Courts are directed to look at the statutory elements only and not to consider the underlying facts of the crime. This direction away from examining the record of a particular conviction is the raison d'être of the categorical approach. In employing the categorical approach, courts must look to state law to interpret the statutory elements. *Harris*, 844 F.3d at 1264. Interpreting the meaning of a statutory element is different than looking behind the elements to the facts surrounding conviction. Manzanares seems to conflate these analyses, only the latter of which is at odds with the categorical approach. *See* [Doc. 25] at 4–5. In evaluating "what proof is necessary" for conviction under § 30-3-2(A), the Tenth Circuit in *Maldonado-Palma* was merely interpreting the meaning of the statutory requirement that the assault be committed "with a deadly weapon." 839 F.3d at 1249. This process is not inconsistent with the categorical approach; the categorical approach demands it.

Moreover, Manzanares's arguments that *Maldonado-Palma* misinterpreted New Mexico law are beside the point. Whatever Manzanares thinks of *Maldonado-Palma*, it is binding Tenth Circuit law which this Court must follow. Manzanares urges that Tenth Circuit precedent interpreting state law "can be overruled by a later declaration[] to the contrary by that state's courts." [Doc. 25] at 13 (internal quotation marks omitted) (quoting *United States v. Badger*, 818 F.3d 563 (10th Cir. 2016)). Manzanares argues that *Branch* is the contrary authority that renders the holding of *Maldonado-Palma* non-binding. But, as Judge Vidmar pointed out, *Branch* was decided *before Maldonado-Palma*. It is not contrary intervening authority. Moreover, as Manzanares himself notes, the *Branch* court relied on the reasoning of a New Mexico Supreme Court case decided in 1979. *See* [Doc. 25] at 13. The Court is bound by the Tenth Circuit's recent decision in *Maldonado-Palma*. New Mexico aggravated assault with a

deadly weapon, § 30-3-2(A), qualifies as a violent felony under the force clause of § 924(e)(2)(B).

### *Aggravated Battery*

Manzanares also objects to Judge Vidmar's finding that New Mexico aggravated battery, § 30-3-5(C), qualifies as a violent felony under the force clause of § 924(e)(2)(B). His objections expound on the argument he made in his briefing on the motion. The force element of aggravated battery, he argues, is the "unlawful touching or application of force" to the person of another. Aggravated battery thus requires for conviction no more force than that required to commit simple battery—unlawful touching, no matter how slight—and such de minimis force does not satisfy the force requirement of § 924(e)(2)(B). Although felony aggravated battery additionally requires that the battery either inflict great bodily harm, be done in a manner whereby great bodily harm or death could be inflicted, or be committed with a deadly weapon, this additional requirement concerns the risk of injury and does not bear on the degree of force required to accomplish the battery. Manzanares contends that Judge Vidmar erred by rejecting the proposition that New Mexico aggravated battery includes as an element common law battery and thus can be accomplished with de minimis force. [Doc. 25] at 15. He further suggests that Judge Vidmar's consideration of the divisibility question and application of the modified categorical approach were unnecessary. *Id.* at 26–27.

Manzanares's objections are without merit and will be overruled. First, Judge Vidmar correctly applied the modified categorical approach at the outset of his analysis, finding that § 30-3-5 was divisible into its misdemeanor and felony versions. [Doc. 21] at 18–19. Manzanares argues that application of the modified categorical approach is unnecessary.

[Doc. 25] at 26–27.  He contends that the divisibility question "is irrelevant because both [misdemeanor and felony aggravated battery] require proof of an unlawful touch," and thus neither can satisfy the force clause.  *Id.* at 26.  For the reasons set out in the PF&RD and discussed further *infra*, Manzanares's analysis is flawed.  The additional requirements of felony aggravated battery bear on the question of whether that crime qualifies as a violent felony under the force clause.  It is not sufficient to point out that both versions include the "unlawful touching" requirement of simple battery.  The divisibility analysis and application of the modified categorical approach necessarily precede a comparison of the elements against the force clause, because a statute's divisibility vel non will determine what the elements of the statute are.[12]  *See Mathis*, 136 S. Ct. at 2256 (characterizing the divisibility question as the "threshold inquiry").  I adopt Judge Vidmar's finding that Manzanares was convicted of felony aggravated battery, § 30-3-5(C).

As to the substantive analysis of § 30-3-5(C), Manzanares misapprehends Judge Vidmar's findings in the PF&RD.  He suggests that Judge Vidmar "refuses to acknowledge" that unlawful touching is an element of aggravated battery.  [Doc. 25] at 15.  Judge Vidmar did not refuse to acknowledge the "unlawful touching" requirement.  He found, instead, that the "unlawful touching" element could not be considered in isolation, as Manzanares urges, in comparing that statute to the force clause.  Judge Vidmar found that the additional alternative requirements that elevate simple battery to felony aggravated battery—the infliction of great bodily harm, commission in a manner whereby great bodily harm could be

_____

[12] As Judge Vidmar pointed out in the PF&RD, resolution of the divisibility of § 30-3-5 is an essential first step in this case for a more fundamental reason.  *See* [Doc. 21] at 19 & n.12.  Section 30-3-5 is divisible into a misdemeanor, § 30-3-5(B), and a felony, § 30-3-5(C).  If Manzanares had been convicted of the misdemeanor version, that would be the end of the analysis.  A misdemeanor conviction would not qualify as a violent felony under § 924(e)(2)(B) irrespective of whether the statute of conviction satisfied the force clause.

inflicted, or commission with a deadly weapon—put the statute within the range of conduct that satisfies the force clause. *See* [Doc. 21] at 20–22. In other words, a battery committed in a manner that could inflict great bodily harm necessarily requires the use or threat of *Johnson I*-level physical force. *Id.* at 22 (citing *Johnson I*, 559 U.S. at 140; *Treto-Martinez*, 421 F.3d at 1160).

The Court adopts the reasoning set out in the PF&RD. Contrary to Manzanares's urging, the additional alternative requirements of bodily injury (or use of a deadly weapon) render § 30-3-5(C) a qualifying predicate felony under the force clause. As the Tenth Circuit set out in *Treto-Martinez*, "[n]o matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.'" 421 F.3d at 1160. The "unlawful touching" requirement cannot be evaluated independently of the bodily injury requirement in determining whether the crime requires *Johnson I*-level force. As Judge Vidmar found, Manzanares's reliance on case law analyzing simple battery is unavailing. *See* [Doc. 21] at 22–23; *see also, e.g.*, *United States v. Barraza-Ramos*, 550 F.3d at 1250–51 (Florida aggravated battery statute did not satisfy force clause because it could be violated by merely "touching" a pregnant woman against her will; the statute elevated simple battery to aggravated battery based only on the status of the victim, rather than any additional force or injury requirement).

Manzanares does cite to two Tenth Circuit cases holding that certain state statutes, despite having a bodily injury element, failed to satisfy the force clause of the Guidelines. [Doc. 25] at 19–21 (citing *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005)

(assault statute requiring that the defendant "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes injury to another person by means of a deadly weapon"); *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1195 (10th Cir. 2008) (statute criminalizing the "nonconsensual administration of a drug, substance, or preparation" that causes harm to the victim (internal quotation marks omitted)).  In those cases, the Tenth Circuit rejected the view that the word "physical" in the context of "physical force" could "relate[] to the effect of the force"; instead, it "must refer to the mechanism by which the force is imparted to the 'person of another.'"  *Rodriguez-Enriquez*, 518 F.3d at 1194.  Thus, "intentionally exposing someone to hazardous chemicals," for example, would not constitute "physical force," though it could cause significant bodily harm.  *Id.* at 1195.  Relying on those cases, Manzanares argues that a person could be convicted of felony aggravated battery by, for example, intentionally exposing someone to an allergen that results in serious bodily injury.  [Doc. 25] at 20.  He argues that under the logic of *Perez-Vargas* and *Rodriguez-Enriquez*, such conduct would not satisfy the physical force requirement.

After *Perez-Vargas* and *Rodriguez-Enriquez* were decided, however, the Supreme Court decided *United States v. Castleman*, 134 S. Ct. 1405 (2014).  In that case, the Court evaluated whether conviction for an offense involving knowingly or intentionally causing bodily injury to another satisfied the force clause of the definition of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9).  The Court held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force."  134 S. Ct. at 1414.  "A 'bodily injury,'" the Court held, "must result from 'physical force.'"  *Id.*  This is true whether or not the force is applied directly:

28

[A]s we explained in [*Johnson I*], "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." And the common-law concept of "force" encompasses even its indirect application. . . . It is impossible to cause bodily injury without applying force in the common-law sense. Second, the knowing or intentional application of force is a "use" of force. [The defendant] is correct that under *Leocal v. Ashcroft*, the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink[.]" The "use of force" in [the defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [the defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct"; it did not hold that the word "use" somehow alters the meaning of "force."

*Id.* at 1414–15 (internal citations omitted).

It is true that the Court in *Castleman* was evaluating the physical force requirement of a *misdemeanor* crime of domestic violence, rather than the physical force requirement of a violent *felony*. And the majority opinion in *Castleman* acknowledged that it was not deciding whether "causation of bodily injury necessarily entails *violent* force." 134 S. Ct. at 1413 (emphasis added). *But see id.* at 1417 (Scalia, J., concurring) ("[I]ntentionally or knowingly caus[ing] bodily injury categorically involves the use of force capable of causing physical pain or injury to another person." (second alteration in original) (internal citation and quotation marks omitted)). Nevertheless, the Court's reasoning with respect to the meaning of "use of force"—namely, its determination that such use of force may be effectuated through direct *or* indirect means—

extends to an interpretation of an identically-worded phrase appearing in a similar context.[13]  The

Court's logic—i.e., that the use of physical force lies in the act of causing physical harm and not

necessarily in the physical exertion required to create the harm—applies equally to the force

clause of § 924(e)(2)(B).  *Castleman* thus undercuts the logic of *Perez-Vargas* and *Rodriguez-*

*Enriquez* and forecloses Manzanares's argument on this point.

Battery that inflicts or could have inflicted great bodily harm necessarily entails the

violent force required by *Johnson I*—the use or threat of force "capable of causing physical pain

or injury to another person."  559 U.S. at 140.  New Mexico felony aggravated battery, § 30-3-

5(C), qualifies as a violent felony under the force clause of § 924(e)(2)(B).[14]

### *Armed Robbery*

Finally, Manzanares objects to Judge Vidmar's finding that New Mexico armed robbery,

§ 30-16-2, qualifies as a violent felony under the force clause of § 924(e)(2)(B).  Though he

found that § 30-16-2 was divisible into simple robbery and armed robbery, Judge Vidmar found

that New Mexico robbery requires *Johnson I*-level physical force irrespective of whether the

defendant was armed with a deadly weapon.  [Doc. 21] at 24–32.  In his objections, Manzanares

re-asserts the arguments and authorities he cited in his original briefing.  [Doc. 25] at 28–32.

Citing the same body of New Mexico case law, he maintains that New Mexico robbery can be

---

[13] Other courts in the Tenth Circuit have reached the same conclusion.  *See Miller v. United States*, 2016 WL 7256875, at *5–7 (D. Wyo. Dec. 15, 2016) (unpublished) (Wyoming robbery statute requiring that the defendant inflict bodily injury upon another person in the commission of the crime satisfied the Guidelines' force clause); *Pikyavit v. United States*, 2017 WL 1288559, at *4–7 (D. Utah Apr. 6, 2017) (applying the reasoning of *Castleman* to hold that Utah's assault by prisoner statute qualified under the ACCA's force clause).

[14] Several other judges in this District have reached the same conclusion.  *E.g.*, *United States v. Pacheco*, 16-cv-0341 WJ/CG, [Doc. 15] at 8–9 (D.N.M. June 1, 2017); *United States v. Sanchez*, 16-cv-0659 JAP/GBW, [Doc. 26] at 14–16 (D.N.M. Sept. 27, 2017); *United States v. Dallas*, 16-cv-0676 MV/LF, [Doc. 15] at 6–10 (D.N.M. May 3, 2017); *United States v. Sedillo*, 16-cv-0426 MCA/LAM, [Doc. 18] at 13–16 (D.N.M. Mar. 6, 2017); *United States v. Vasquez*, 16-cv-0678 JAP/WPL, [Doc. 11] at 8 (D.N.M. Jan. 10, 2017).

accomplished through the application of de minimis force to the victim. *Id.* at 28–29. He cites a large volume of case law from other federal courts in support of his position. *Id.* at 31–32.

On de novo review, the Court adopts the reasoning set out by Judge Vidmar in the PF&RD and finds that New Mexico robbery requires *Johnson I*-level physical force. As discussed at length *supra*, there is no question that the force clause of the ACCA requires more than de minimis force. *See Harris*, 844 F.3d at 1264–65 (the Court in *Johnson I* used the language of "*violent* force" and "strong physical force" in the course of "rejecting the government's argument that physical force means . . . . even the slightest offensive touching" (internal quotation marks omitted)). New Mexico robbery requires more than such minimal force. *See, e.g.*, *Clokey*, 1976-NMSC-035, ¶ 3 ("The question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion."); *Lewis*, 1993-NMCA-165, ¶ 15 (declining to interpret the New Mexico robbery statute "to encompass situations where force is used to retain property immediately after its *nonviolent* taking," and reiterating that "force must be the lever by which property is separated from the victim" (emphasis added)).

As Judge Vidmar noted in the PF&RD, the language of the Supreme Court of New Mexico in *State v. Bernal* provides the strongest indication that New Mexico robbery requires *Johnson I*-level violent physical force. New Mexico robbery, as opposed to larceny, "requires, and is designed to punish, the element of force." 2006-NMSC-050, ¶ 28. "Since robbery generally carries a heavier punishment than larceny, the robbery statute clearly is designed to protect citizens from violence." *Id.* Robbery "is not merely a property crime, but a

crime against a person."[15] *Id.; see also Harris*, 844 F.3d at 1264 (looking to language from the

Colorado Supreme Court distinguishing between robbery and larceny in deciding that Colorado

robbery satisfied the force clause); *United States v. Garcia*, 2017 WL 2271421, at \*24 (D.N.M.

Jan. 31, 2017) (relying on *Bernal* to find that New Mexico robbery satisfies the force clause).

Manzanares fails to address Judge Vidmar's analysis of *Bernal* in his objections. His other

arguments regarding case law purporting to provide that New Mexico robbery can be committed

with no more than de minimis force were soundly rejected by Judge Vidmar in the PF&RD.

*See* [Doc. 21] at 28–30; *see also Garcia*, 2017 WL 2271421, at \*23 n.12 ("[A]s applied, the

Court is convinced that Court of Appeals of New Mexico's standard results in robbery

convictions only where a defendant utilizes *Johnson I* violent force."). His citations to

Tenth Circuit case law in support of his position are unavailing because the cases he cites address

statutes whose force elements are satisfied by de minimis force. *E.g.*, *United States v. Ama*,

684 F. App'x 736, 741 (10th Cir. 2017) (federal statute criminalizing "forcibl[e]" assault of a

federal employee did not satisfy force clause, where "[e]ven minor contact, such as lay[ing]

one's finger on another person without lawful justification" was "forcible" (last alteration in

original) (internal quotation marks omitted)); *United States v. Lee*, 2017 WL 2829372, at \*4

(10th Cir. June 30, 2017) (unpublished) (holding that Florida statute that could be violated by

"wiggling and struggling" to avoid arrest or "clipping an officer's hand while fleeing" did not

---

[15] In the PF&RD, Judge Vidmar noted, based on the above-quoted language in *Bernal*, that the force required to commit robbery is that which puts the victim on notice and creates the possibility of a dangerous and violent confrontation. [Doc. 21] at 26. He noted that this looming potential for a violent altercation—on which the force requirement of New Mexico robbery is based—was similar to the threat of violence created by the force element of the assault statute analyzed by the Tenth Circuit in *Ramon Silva*. *Id.* The Tenth Circuit found that the assault statute satisfied the force clause because it "could always lead to . . .substantial and violent contact." *Id.* (quoting *Ramon Silva*, 608 F.3d at 672). In his objections, Manzanares suggests that this reference to the possibility of violent contact is somehow a reference to the invalid residual clause. [Doc. 25] at 29–30. In fact, the language on which Judge Vidmar was relying came from the Tenth Circuit's analysis of the force clause.

satisfy the force clause, though it was a "close call"); *United States v. Nicholas*, 686 F. App'x 570, 574 (10th Cir. 2017) (Kansas robbery "requires nothing more than de minimis physical contact"). Likewise, his citations to other federal court decisions analyzing similar statutes are unavailing. Again, most of the cases he cites address statutes whose force requirement can be satisfied through de minimis force. *See id.* at 31–32.

New Mexico robbery qualifies as a violent felony under the force clause of § 924(e)(2)(B). Several judges, including the undersigned, have reached the same conclusion in other cases.[16]

## Conclusion

Manzanares's prior convictions for New Mexico aggravated assault with a deadly weapon, § 30-3-2(A), aggravated battery, § 30-3-5(C), and armed robbery, § 30-16-2, qualify as violent felonies under the force clause of the ACCA's definition of "violent felony," § 924(e)(2)(B). His prior convictions qualify as violent felonies irrespective of the now-invalidated residual clause. His motion under § 2255 will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Manzanares's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 57; CV Doc. 25] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 53; CV Doc. 21] are **ADOPTED**.

---

[16] *See United States v. Barela*, 2017 WL 3142516 (D.N.M. July 25, 2017); *see also, e.g., Garcia*, 2017 WL 2271421, at *53–57; *United States v. Serrano*, 16-cv-0670 RB/WPL, [Doc. 16] at 4 (D.N.M. May 9, 2017); *United States v. Dean*, 16-cv-0289 WJ/LAM, [Doc. 17] at 6 (D.N.M. May 3, 2017); *Rhoads v. United States*, 16-cv-0325 JCH/GBW, [Doc. 20] at 11 (D.N.M. Apr. 5, 2017); *Hurtado v. United States*, 16-cv-0646 JAP/GJF, [Doc. 17] (D.N.M. Jan. 11, 2017). *But see United States v. King*, 16-cv-0501 MV/KK, [Doc. 18] at 29 (D.N.M. Mar. 31, 2017) (finding that New Mexico armed robbery does not qualify as a violent felony under the ACCA's force clause).

**IT IS FURTHER ORDERED** that Defendant Archie Manzanares's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 35; CV Doc. 1] is **DENIED**.  Case number 16-cv-0599 WJ/SMV is **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

_____
**WILLIAM P. JOHNSON**
**UNITED STATES DISTRICT JUDGE**